### T. A. CHEEVES V. J. H. ANDERS, ADMINISTRATOR.

#### No. 205.

**1. Insurable Interest—Public Policy.**

It is against public policy to allow any one who has no insurable interest to be the owner of a policy of insurance upon the life of a human being ..... 291

**2. Same—Beneficiary.**

Such policy can not be beneficially owned by any one not interested in the life insured, whether the policy be taken out in the first instance by the noninterested party, with or without the consent of the insured, or that he acquired the policy by assignment from the person whose life is insured, or from another who had an insurable interest ..... ...................... 292

**3. Holder of. Policy by One Having no Insurable Interest.**

If the person named as beneficiary, or the assignee of such policy, has no insurable interest in the life of the insured, he will hold the proceeds as the trustee for the benefit of those entitled by law to receive it.............. 292

**4. Creditor of Insured.**

The limit of interest of a creditor in a policy upon the life of his debtor is the amount of such debt and interest plus amount expended to preserve the policy with interest thereon. The remainder will go to the estate of the insured............................... ................................ 292

**5. Liability of the Insurance Company.**

In case a policy is held by one having no insurable interest in the life, the company can not avoid payment on that ground. The insurance company must perform its contract, and the law will dispose of the money according to the rights of the parties............................................ 292

6. Cessation of Insurable Interest.
   The want of insurable interest is just as absolute where it has ceased as where
      it never existed.   Interest in a policy upon one member of a partnership
      held by the firm ceased upon the dissolution of such firm, and the survivor
      has no interest in the recovery ....................................... 294
7. Premiums Paid by Partnership.
   Premiums paid by a partnership upon the life of one of its members payable
      to the firm, the firm having dissolved before the death, are a charge upon
      the policy, and are recoverable by the owner of the firm assets.. ......... 294
8. Pleading—Practice.
   The facts upon which the right arises (to recover the premiums, etc.), are al-
      leged, and there is a prayer for general relief.   This was sufficient to entitle
      the pleader to whatever the law would accord him upon the alleged facts,
      and it was error to sustain a general demurrer to such pleading .......... 294

ERROR to Court of Civil Appeals for Third District, in an appeal from Falls County.

The facts are stated in the opinion.   The contention, as stated in the petition for writ of error, is as follows: "The exact point of contention presented for decision is embraced in the following proposition:   That Cheeves, being a partner of L. B. Chilton at the time the contract of insurance was perfected, and then having an insurable interest in the life of the latter, it was not essential to the rights of the beneficiary that such interest should continue until the happening of the event on which performance by the insurer is conditioned.   In short, the cessation of the insurable interest in Cheeves in the life of Chilton, i. e., his ceasing to be a partner of Cheeves, could not affect the rights of the latter if such insurable interest existed at the time the contract was made."

The trial court held, that upon the cessation of the partnership existing between Chilton and Cheeves the latter had no insurable interest in the life of Chilton, and therefore was not entitled to recover, although he was a direct beneficiary named in the policy.   The Court of Civil Appeals affirmed the judgment of the District Court.

*John L. Dyer*, for plaintiff in error.—1. The chief point relied upon by plaintiff in error for a reversal of this case is involved in the proposition that plaintiff in error, being a partner of L. B. Chilton when the contract of insurance was perfected, and then having an insurable interest in the life of Chilton, the subsequent dissolution of said firm could not affect the right of plaintiff in error to a recovery on the contract of insurance against the insurance company, or L. B. Chilton's legal representatives.

The foregoing proposition is sustained abundantly, both upon principle and authority.   In the case of Rawls v. Insurance Company, 27 New York Appeals, 289, the court say:   "But in the contract of life

insurance, it is enough that the party effecting the policy had an insurable interest at its inception; and it is not required that that interest should continue and exist at the time of the death of the person whose life is insured to entitle the holder of the policy to recover." And again: "If made by a person having an interest in the duration of the life, it was sufficient to make it valid in point of law that that interest existed at the time of making the policy. It seems remarkable to me that any other view should be taken of the question."

The case of Insurance Company v. Schaefer, 94 United States, 457, which was a suit by a divorced wife on a joint policy to herself and husband for the amount of the policy after her husband's death, sustains the doctrine of the above New York decision fully. The court say: "We do not hesitate to say, however, that a policy taken out in good faith, and valid at its inception, is not avoided by the cessation of the insurable interest, unless such be the necessary effect of the provisions of the policy itself." And the court in the last case concludes: "In our judgment, a life policy originally valid does not cease to be so by the cessation of the assured party's interest in the life insured." See also the following cases: McKee v. Ins. Co., 28 Mo., 383; Mowry v. Ins. Co., 9 R. I., 346; Loomis v. Ins. Co., 72 Mass., 401. See also the following text authorities: Bliss on Life Ins., secs. 30, 31; Bacon's Ben. Soc. and Life Ins., secs. 248, 253, 297, 279; Cook on Life Ins., sec. 64.

*J. A. Martin*, for defendant in error.—Whether or not Cheeves would have a right of recovery against the insurance company is a question we need not discuss, because the insurance company is making no contest, but stands ready to pay the money to whoever it may be adjudged. This controversy is between Cheeves and the administrator of Chilton as to who is entitled to the money due on the policy. This question has met with different answers from different courts of the United States, and hence it is of but little avail to cite authorities from other States if the question has been adjudicated in our own State.

In the case of Price v. Knights of Honor, 68 Texas, 362, to which counsel for Cheeves refers in his brief, the question was, as stated by the court: "Can a party having no insurable interest in the life of another receive an assignment of a policy of insurance upon the life of the latter, upon an agreement merely to pay the premiums or assessments necessary to keep the policy in force?" After discussing authorities from other States pro and con, the court say: "We think those decisions which hold these assignments invalid are based upon the more satisfactory reasoning." The reasoning of our court in its opinion in that case, shows that the court attached no special importance to the fact that the consideration paid for the assignment of the

policy was grossly inadequate. The case was decided upon the broad ground that it was against public policy.

The case of Schonfield v. Turner, 75 Texas, 324, reaffirms the doctrine announced in Price v. Knights of Honor; and while the court quote and discuss the constitution and regulations of the order of the Knights of Honor as to the issuance of certificates, it does not allow such constitution and regulations to control the disposition of the money, but rather overrides them, and awards the money to the heirs and not to the beneficiary named in the certificate, because, as the court say, "it is contrary to public policy to allow any one not owning an insurable interest to become the owner, by assignment or otherwise, of insurance upon the life of a human being."

The case of Insurance Company v. Hazlewood, 75 Texas, 351, cites and follows the foregoing cases. In that case the court say: "The doctrine is well settled by the weight of authority, that a person not having an insurable interest in the life of another can not take and hold by an assignment a policy upon the life of such other person, and that a creditor can only take and hold such a policy by assignment to an extent sufficient to secure his debt. Cammack v. Lewis, 15 Wall., 643; Warnock v. Davis, 104 U. S., 782; Price v. Knights of Honor, 68 Texas, 361.

The only distinction we can see in any case between the assignment of a policy taken by a person on his own life to one having no insurable interest, and the designating such person without insurable interest in the original transaction as the beneficiary, is that the insurer may not know of the assignment, but would ncessarily be aware of the designation in the policy. So far as the question of public policy is concerned, we can see no substantial distinction between the two proceedings, and if one is invalid it seems to us the other ought to be held equally so. An assignment of a policy to one having no insurable interest in the life insured does not invalidate the policy. The assignee may collect and apply the proceeds, if he is a creditor, to the extinguishment of his debt and such sums as he may have disbursed for the purpose of keeping the policy alive, and the surplus may be collected for the benefit of the heirs of the person whose life was insured. We see no reason why the same rule may not be applied to a person designated as beneficiary, treating him as trustee for the owners.

BROWN, ASSOCIATE JUSTICE.—J. H. Anders, as administrator of L. B. Chilton, brought this suit in the District Court of Falls County to recover the amount of a policy issued by the New York Life Insurance Company for $10,000, payable to Cheeves and Chilton, or their administrators or assigns, making the insurance company and Cheeves defendants. The insurance company did not deny liability, and the

contest was between the plaintiff and Cheeves as to the right to receive the proceeds from the policy.

Cheeves filed an answer, in which he pleaded that he was entitled to the proceeds of the policy as against the company and plaintiff, because at the time of issuing the said policy, on the 17th day of May, 1889, he and the deceased, L. B. Chilton, were partners engaged in a mercantile business in Falls County, and that the said partnership procured the issuance of the said policy of insurance upon the life of the said Chilton and paid the premium thereon, $590, out of and with the money and assets of said firm, and that thereafter, on April 23, 1890, the said firm paid out of its assets another premium of $590 upon said policy, which kept it in force until the death of Chilton.

It is alleged in the answer, that at the same time another policy was issued by the said insurance company payable to Cheeves & Chilton, or their administrators or assigns, upon the death of T. A. Cheeves, and for the like sum of $10,000, upon which premiums were paid out of the assets of the said firm amounting to an equal sum as that paid upon the policy in suit.

That on the 23rd day of September, 1890, the firm of Cheeves & Chilton was dissolved, and Chilton, for a consideration of about $20,500, by writing conveyed to Cheeves all of his right and claim in and to all of the partnership property and rights of every kind, the language being set out broadly enough to include all interest that the firm had in the policy at the time of the transfer.

Chilton died November 7, 1890, and proofs of loss were duly furnished. Cheeves claims that he was interested in the life of Chilton as his partner at the time the policy was issued, and also that Chilton transferred the policy to him. He closed his answer with a prayer for general relief.

There is no allegation in the answer that L. B. Chilton was indebted to the firm of Cheeves & Chilton, or to Cheeves, or in what respect Cheeves had any interest in the life of Chilton, except simply that he was a partner when the policy was issued.

Plaintiff filed a general demurrer to the answer, which the court sustained, and upon trial without a jury gave judgment for the plaintiff against both defendants for the whole amount of the policy, which judgment was by the Court of Civil Appeals affirmed.

It is against the public policy of this State to allow any one who has no insurable interest to be the owner of a policy of insurance upon the life of a human being. Price v. Knights of Honor, 68 Texas, 361; Schonfield v. Turner, 75 Texas, 329; Ins. Co. v. Hazlewood, 75 Texas, 351.

In some States it is held that an element of wagering likewise enters into such contracts, which has led, as we believe, to inconsistencies in the decisions in some of the courts. Our court has placed the inhibition against such contracts upon the higher and sounder ground that

the public, independent of the consent or concurrence of the parties, has an interest that no inducement shall be offered to one man to take the life of another. Making this the test in every phase of such cases, there can be no inconsistency in our decisions, and the public good will be better guarded.

Applying this salutary rule, the conclusion has been reached by our courts that such policy can not be beneficially owned by any one not interested in the life insured, whether the policy be taken out in the first instance by the noninterested party, with or without the consent of the insured, or that he acquired the policy by assignment from the person whose life is insured, or from another who had an insurable interest.

A man may insure his own life, making the policy payable to his legal representatives, and afterwards assign it to any one, or he may procure such policy and make it payable to any person that he may name, but in either case, if the person to whom it is assigned or who is named in the policy has no insurable interest, he will hold the proceeds as a trustee for the benefit of those entitled by law to receive it. Price v. Knights of Honor; Schonfield v. Turner, cited above.

The law permits one who is interested in the life of another to become the owner of insurance upon the life of such other person, either by contracting with the insurance company, or by contract made by the party whose life is insured, or by assignment of the policy after it is issued. If, however, the interest is of a definite character, as that of a creditor of the insured, or of one who may from the life of the insured reap some pecuniary advantage of a definite nature, the interest of the holder of such policy will be limited to the amount of such liability at the death of the insured, together with such amount as he has paid to preserve the policy, with interest thereon, and the remainder will be given to the estate of the party insured. Price v. Knights of Honor, 68 Texas, 361; Schonfield v. Turner, 75 Texas, 324; Ins. Co. v. Hazlewood, 75 Texas, 338; Goldbaum v. Blum, 79 Texas, 638. If the interest of the policy holder should cease before the death of the insured, or if the debt and premiums advanced should be paid, then the whole of the policy will go to the estate of the insured.

When an insurance company has issued a policy upon the life of a person payable to one who has no insurable interest in the life insured, or when a policy has been assigned to one having no such interest, the insurance company must nevertheless pay the full amount of the policy, if otherwise liable, because it has so contracted, and it is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper parties under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties. Ins Co. v. Williams, 79 Texas, 637, and authorities cited.

This rule does no wrong to the insurance company. It having agreed to pay the money on the death of a named person, ought not to be permitted to avoid liability upon its contract upon the ground that it has made an unlawful agreement, when that contract can be enforced in favor of a person who is in nowise concerned in the unlawful part of the transaction. It is held by the courts of this and other States, that when one secures a policy upon his own life and transfers it to another who has no insurable interest, the want of insurable interest can not be set up as a defense by the insurance company; the policy or the assignment is not void as to the insurance company, but will be enforced. If this be correct, then why should it be said that the policy issued by the company contrary to law should be held void as to it? The reason would seem to be equally strong to enforce the contract in favor of one who was entirely innocent of participation, as in favor of him who voluntarily places the insurance in the name of one who can not lawfully receive it. If the insurance company may set up the illegality of such a contract, then the object of the law will be frustrated and the making of such unlawful agreements by insurance companies will be encouraged, for they would thus be enabled to reap the benefit, without incurring the risk of such business. If the insurer is held liable, and the payee in a policy is denied its benefits when unlawfully obtained, both parties to the unlawful contract will be denied relief, and the beneficial objects of insurance upon the life be attained by giving the benefits to the estate of the insured, and no inducement will be offered to destroy the life upon which the risk is placed.

It is generally held, that where one having an interest in the life of another obtains a policy upon such life, and the interest ceases before death, the person named in the contract as payee or the assignee of such policy may maintain suit against the insurance company. Ins. Co. v. Allen, 138 Mass., 24; Ins. Co. v. Schafer, 94 U. S. 457; McKee v. Ins. Co., 28 Mo., 383. These cases do not determine as to how the proceeds shall be distributed, and are not in conflict with the former decisions of this court. It has, however, been held that where the interest existed at the time of making the contract, but ceased before death, the person to whom the policy is made payable may recover and hold the entire amount of the policy as against the claim of the representatives of the insured. Scott v. Dickson, 108 Pa. St., 6; Rittler v. Smith, 70 Md., 261; Amick v. Butler, 111 Ind., 578. This we regard as opposed to the paramount reason for holding such insurance to be unlawful, that is, the danger in offering an inducement to destroy human life. If the inhibition against such transactions be that they are considered wagering contracts, as appears to be the ground upon which the decisions cited are placed, it is consistent to hold as in the cases quoted. If, however, the making of such agreements be placed upon the ground that it is against public policy for one to be

interested in the death of another when he has no interest in the continuance of his life, the decisions can not be sustained upon principle. The want of insurable interest is just as absolute where it has ceased as where it never existed, and the inducement to destroy the life insured, for gain, is just as strong in the one case as in the other.

We can not disregard the sound principles established by our courts and follow a line of decisions to the contrary, however eminent the courts or numerous the cases. We therefore hold that in this case the interest which Cheeves may have had in the policy as partner, aside from his interest which was joint with Chilton and therefore belonged to the partnership, ceased at the dissolution of the firm, and will not sustain his claim to the proceeds of this policy.

The language of the assignment made by Chilton to Cheeves is sufficient to convey to the latter all the interest of the firm in this policy. This brings us to the inquiry as to what interest the firm of Cheeves & Chilton had in this policy at the date of the dissolution.

We will not undertake to enumerate the different phases of facts in which the firm might be interested in such a policy, nor when it might be regarded as assets of the firm for the whole amount. It is sufficient to say that no such state of facts is alleged as gives to the firm such right, nor to the claimant Cheeves any right by reason of a liability for the debts of the firm. The answer shows that Chilton did not owe the firm any remaining debt, and that the property was more than sufficient to pay all firm debts, for Cheeves assumed all such debts, and in addition paid to Chilton several thousand dollars for his interest therein. The firm had no right to the policy as such. The answer, however, does allege that the premiums upon the policy to amount of $1180 were paid by the firm out of its assets, and this would create a charge upon this policy in favor of the firm, with the right to be reimbursed with interest, out of the proceeds of the policy, the same as if it had been paid by a creditor whose debt had been paid, or when the debt was not equal to the amount named in the policy. This right existed in the firm at dissolution, and by the transfer of Chilton passed to Cheeves.

The facts upon which the right arises are alleged in the answer, and there is a prayer for general relief, which was sufficient to entitle Cheeves to whatever the law would accord him upon the alleged facts. It was error to sustain the general demurrer to this answer because it showed a right in the defendant Cheeves to some relief, although not to the whole amount in controversy.

The insurance company does not complain of the judgment, and it will be affirmed as to the New York Life Insurance Company. Because of the error of the District Court in sustaining a demurrer to the answer of T. A. Cheeves, and the error of the Court of Civil Appeals in failing to reverse said judgment for that error, the judgments of both courts are reversed as to plaintiff J. H. Anders, administrator of L.

B. Chilton, and defendant Cheeves, and this cause is remanded to the District Court for further proceedings in accordance with this opinion; to ascertain the rights of the said Anders, administrator, and Cheeves in the proceeds of said policy.

*Reversed and remanded.*

Delivered November 12, 1894.