## H. P. STACY v. G. S. PARKER.

Decided November 28, 1910.

**1.—Debt—Limitation—Written Acknowledgment.**

A written acknowledgment of a debt, in order to remove the bar of the statute of limitation, must be clear and unequivocal and unqualified by conditions. An acknowledgment of the justness of the demand is not sufficient; there must be an acknowledgment of the party's present liability. A written instrument considered, and held insufficient to remove the bar of the statute of limitation, then complete, as to a debt due on demand.

**2.—Same—Demand Debt.**

An agreement by a creditor to "carry" indefinitely a debt due by his debtor

makes the debt in effect one due on demand, and the statute of limitation begins to run from the date of the agreement.

### 3.—Same—Writing Construed.

A written agreement between a debtor and creditor by which a fund is provided for the payment of the debt is not necessarily such an acknowledgment of the justness of the debt as will suspend the statute of limitation.

### 4.—Life Insurance—Debtor and Creditor—Premiums—Liability of Debtor.

An instrument in writing between a debtor and creditor considered and held, in the light of the evidence, to manifest an agreement that the creditor might at his own expense and for his own security insure the life of the debtor; that the debtor was not to be personally responsible for the premiums paid by the creditor on the policies of insurance; that it did not suspend the statute of limitation; and that, upon the insurance companies becoming insolvent and the policies worthless, it would not support an action by the creditor against the debtor for either the original debt or the premiums paid for the insurance.

Appeal from the District Court of Brazos County.   Tried below before Hon. J. C. Scott.

*W. C. Davis* and *Hutcheson, Campbell & Hutcheson,* for appellant.— The debt of $671.39 was barred in two years from February 19, 1894. Grayson v. Taylor, 14 Texas, 675; Leigh v. Linthicum, 30 Texas, 102; Riggs v. Hanrick, 59 Texas, 572; Gathright v. Wheat, 70 Texas, 742.

The instrument of April, 17, 1897, is not such a new promise in writing as would remove the indebtedness claimed by plaintiff from the bar of the statute, or that would furnish the basis of any suit for an indebtedness, as same does not give any promise or agreement on the part of the defendant to pay, but is merely an order on a fund to be paid at defendant's death.   Coles v. Kelsey, 2 Texas, 555; Krueger v. Krueger, 76 Texas, 179; McDonald v. Grey, 29 Texas, 83; Aldrette v. Demitt, 32 Texas, 577; Smith v. Fly, 24 Texas, 354.

Where an obligation is payable on demand, limitation commences to run on the obligation from its date.   Henry v. Roe & Burnside, 83 Texas, 449; Cook v. Cook, 19 Texas, 434; Eborn v. Zimpelman, 47 Texas, 503.

*Robert Armstrong, R. E. L. Knight* and *A. F. Weisberg,* for appellee. —Where a creditor and debtor enter into an agreement that a debt shall be paid upon the death of the debtor out of a specific fund, and where before the death of the debtor it becomes definitely certain that said specific fund will never come into existence, the debt forthwith matures. Wylie v. Hightower, 74 Texas, 306; Mich. State Bank v. Leavenworth, 28 Vt., 209; Harshaw v. McKesson, 65 N. C., 688; Maples v. Hicks, Pa. Law. J., 244; Bank v. Harris, 7 Wash., 139, 34 Pa., 466; Place v. McIlvain, 1 Daly (N. Y.), 266; Sawyer v. Colgan, 102 Cal., 283; 36 Pac., 680; Davis v. Lincoln Co., 23 Nev., 262, 45 Pac., 982; Lincoln County v. Luning, 133 U. S., 529, 10 S. Ct., 363, 33 L. Ed., 766; Fernandez v. New Orleans, 46 La. Ann., 1130, 15 So., 378; New Orleans v. Warner, 175 U. S., 128; Grayson v. Latham, 84 Ala., 546; Wetmore v. Monona County, 73 Ia., 88; Stephens Co. v. Tandler, 9 Kan.

App., 761; Aultman v. Martin, 49 Neb., 103; Brown v. Hitchcock, 37 Atl., 292; Sayers v. Sayers, 19 S. E., 844; Andrews v. Roanoke Co., 36 S. E., 531; Page on Contracts, sec. 1656; 25 Cyc., p. 1068; 19 Am. & Eng. Ency. L., pp. 195, 196; Connolly v. San Francisco, 33 Pac., 1109; Thrall v. Mead, 40 Vt., 540; Dixson, Admr., v. Campbell, 33 Ky. (3 Dana), 603; Henry v. Rowell, 64 N. Y. Supp., 488, 71 N. Y. Supp., 1137; Howe v. Gunnison, 15 L. R. A. (N. S.), 1276; Wallace v. N. Assurance Co., 64 Ia., 101, 19 N. W., 865; 25 Cyc., p. 768, note 66.

Where a debtor draws a bill of exchange upon an insurance company directing it to pay to the creditor certain indebtedness accrued and to accrue in the future; and where it is understood, contemplated and agreed between the drawer and the payee that the drawee shall pay the said bill of exchange upon the death of the debtor out of a specific fund; and where before the death of the debtor it becomes definitely certain that such specific fund will never come into existence, the said bill of exchange forthwith matures. Michigan Bank v. Eldred, 9 Wall., 544; Wells v. Brigham, 6 Cush., 6; Downing v. Backenstoes, 3 Caines, 137; Prest. Turnpike Road v. Hurtin, 9 Johns, 217; Kimball v. Huntington, 10 Wen., 675; Hall v. Farmer, 5 Denio, 484.

Where a creditor and debtor meet and strike an agreed balance or account stated, and it is agreed between them that the balance struck, together with certain future indebtedness, shall be paid at some time in the future or upon some contingency in the future, as where it is agreed that said agreed balance and future indebtedness shall be paid upon the death of the debtor out of a specific fund; and where before the death of the debtor it becomes definitely certainly that said specific fund will never come into existence, the debt forthwith matures. Union Bank v. Knapp, 3 Pick. (Mass.), 96; Davis v. Tiernan, 2 How. (Miss.), 804; Claire v. Claire, 10 Neb., 57; Hawkins v. Long, 74 N. C.., 783; Truman v. Owens, 17 Ore., 525; Zacarino v. Pallotti, 49 Conn., 36; 1 Am. & Eng. Enc. of Law, 437; Ogden v. Astor, 4 Sandf. (N. Y.), 311; Bevan v. Cullen, 7 Pa. St., 281; Tyke v. Cosford, 14 U. C. C. P., 64; 1 Cyc., 367, 397, note 93, 373; Tuggle v. Minor, 76 Cal., 96; Baird v. Crank, 98 Cal., 293; Coughlin v. Gutta Percha Co., 33 Ill. App., 71; Ferguson v. Kerr, 5 U. C. Q. B., 261; McQueen v. McQueen, 9 U. C. Q. B., 536, 10 U. C. Q. B., 359; Young v. Fluke, 15 U. C. C. P., 360; 1 Am. & Eng. Enc. of Law, 455; McCormack v. Sawyer, 104 Mo., 36; Work v. Beach, 53 Hun. (N. Y.), 7; 1 Am. & Eng. Enc. of Law, 455.

REESE, ASSOCIATE JUSTICE.—This is a suit by G. S. Parker against H. P. Stacy, begun August 11, 1909, to recover money alleged to be due upon a certain contract in writing. Upon trial without a jury plaintiff recovered judgment for $1994.80, from which defendant appeals.

The petition alleged, in substance, that on February 9, 1894, plaintiff and defendant had a settlement and adjustment of accounts between them, when it was ascertained that defendant owed plaintiff $671.39 which defendant thereupon agreed to pay. That thereafter at various

times up to December 31, 1907, plaintiff advanced to defendant, at his special request, various sums of money, amounting in the aggregate to $699.08, as shown by exhibit attached to the petition, which defendant agreed to pay. The exhibit attached showed that these advances consisted of premiums paid on the two insurance policies on the life of defendant issued to plaintiff, as creditor, hereinafter referred to.

To the petition defendant answered pleading the statute of limitation of two and four years, and further, as to all of the items except the $671.39, the amount of the stated account, that he was never at any time liable for the same; that these items consisted of premiums paid out by plaintiff on certain insurance policies taken out by him on the life of defendant for his own protection and that defendant never at any time agreed to repay the same.

To this answer plaintiff filed a pleading styled "supplemental petition" wherein he adopts the allegations of his original petition and, by way of answer to defendant's pleas of limitation, says that on April 17, 1897, defendant, for the purpose of protecting plaintiff in the payment of the $671.39 due by account stated, and such other amount as he might thereafter become indebted to him, executed to plaintiff the following instrument:

"Bryan, Texas, April 17, 1897.

"For value received I hereby direct and order the Mutual Reserve Fund Life Association of New York at my death to pay to G. S. Parker, of Bryan, Texas, his order, or assigns, the sum of $671.39, value received, together with 10 per cent interest per annum on same until paid from January 1, 1894, said interest being due and payable annually on January 1st each year, and when not so paid is to be added to the principal and to bear interest at the rate of 10 per cent per annum; together with all insurance premiums paid to the Mutual Reserve Fund Life Association by G. S. Parker on my policies, together with interest on said premiums at the rate of 10 per cent per annum from January 1st each year until paid, said premiums and interest to be due and payable to G. S. Parker on January 1st each year and when not so paid to be added to the principal, and the whole to bear interest at the rate of 10 per cent per annum until paid, together with all open accounts against me, as shown by G. S. Parker's ledgers, said open accounts to bear interest at the rate of 10 per cent per annum from the 1st day of January after the date thereof; together with any notes or accounts assumed by G. S. Parker for me or my accounts. Witness my hand at Bryan this 17th day of April, 1897."

It was further averred that about February 3, 1894, to protect plaintiff as creditor, defendant had a policy of insurance on his life issued to plaintiff for $1000 by the Mutual Reserve Fund Life Association, and on or about April 28, 1897, had another policy for the same amount issued by the same company, both payable to plaintiff as creditor, "as his interest may appear"; that the items of indebtedness set out in the

exhibit were advanced to defendant at his request, and were ratified by him in said instrument.

It was further alleged that at the time of the execution of said instrument said insurance company was solvent, and neither party contemplated its insolvency, and that it was understood and agreed that plaintiff would not sue upon any of the indebtedness sued on during the life of defendant, provided the insurance company remained solvent, and that said indebtedness should not mature until the death of defendant or the insolvency of the company. It was further alleged that the said insurance company became insolvent on or about February 15, 1908, and the policies are worthless, and thereupon the indebtedness became due.

In response to this pleading defendant pleaded that he never agreed to reimburse plaintiff for the premiums, which were paid by plaintiff at his own risk and for his own protection, and not at the request of defendant; and that the instrument referred to and copied herein was simply an order to the insurance company to pay, at defendant's death, the amount of money mentioned and, if defendant owed it, it was not yet due, and if due, became due long prior to the filing of this suit and was barred by limitation; and, finally, that said instrument was accepted by plaintiff in full satisfaction of the indebtedness referred to, and there was no understanding as to the solvency or insolvency of the insurance company.

The trial court filed its conclusions of fact and law. We approve in part the conclusions of fact, omitting certain conclusions which have no evidence to support them, as will be shown, and adding other conclusions of fact which we find from the undisputed evidence. Our conclusions are as follows:

On February 9, 1894, G. S. Parker and H. P. Stacy had a settlement of accounts that had been running between them, when it was agreed that Stacy owed Parker $671.39. This, Stacy was not able to pay, and Parker thereupon, to protect himself, took out a policy of insurance on Stacy's life for $1000 in the Mutual Reserve Fund Life Association, payable to G. S. Parker "as his interest may appear." There was no understanding or agreement that Stacy was to be liable for these premiums, or was to repay the same. There was no definite agreement with regard to the payment of the $671.39. Parker testified that, as to this, Stacy was not able to pay him, and he agreed to "carry the same" for him, but does not say for how long, nor is there anything in the evidence as to any agreement for any definite credit for this amount. From the evidence, viewing it in the most favorable light for appellee, we find that this amount was an ordinary stated account, due, at least, on demand. Stacy was in bad health and insolvent. It is not shown that Parker ever at any time made any demand upon Stacy for payment of this indebtedness until after the insolvency of the insurance company, as hereinafter set out.

On April 15, 1897, Parker had prepared and presented to Stacy the written instrument set out in full in the statement of the pleadings,

which at his request, Stacy signed and delivered to Parker. It appears to have been contemplated at this time that Parker was to take out another policy on Stacy's life, which he did on April 28, 1897, in the same company and for the same amount as the first. As in the case of the first policy, it was taken out by Parker with Stacy's consent, for his, Parker's, protection as creditor, and there was no agreement or understanding between Stacy and Parker as to payment of the premiums, except that they were to be, and they were, paid by Parker. After the execution of this instrument there were mutual dealings between Parker and Stacy, sometimes calling for payment by Parker to Stacy, which money was always paid, and sometimes Stacy became indebted to Parker, which indebtedness was likewise always promptly paid, but no demand or request was ever made by Parker upon Stacy for payment of any part of the $671.39, the original indebtedness agreed upon in 1894, or any part of the premiums paid by Parker upon the insurance policies, until after the insolvency of the insurance company, as herein stated. On or about the 15th day of February, 1908, the Mutual Reserve Fund Life Association became insolvent and was insolvent at the time of the trial, as agreed by the parties. After this date Parker made demand upon Stacy for settlement, proposing to take his note and mortgage on his real estate, which proposition was refused.

There was no understanding or agreement between the parties as to the future solvency or insolvency of the insurance company, nor as to Stacy's liability in case of the failure of the same. Parker testified: "I did not accept said instrument of writing as payment and settlement of Stacy's indebtedness to me." Parker selected the insurance company, and considered it solvent. After the insolvency of the company was established and upon Stacy's refusal to settle, this suit was instituted.

At the time of the trial the indebtedness claimed amounted to $1994.80, including the principal of the indebtedness of $671.39, with interest at six per cent per annum, and the principal, without interest, of the premiums paid. The plaintiff at the trial in open court waived the ten per cent interest on the premiums paid, as set out in the instrument of April 17, 1897, and asked judgment only for six per cent interest on the $671.39.

The foregoing findings are based either upon the undisputed evidence, or the testimony of appellee Parker. Some of them are contradicted by appellant Stacy, who testified positively that the insurance policies were taken out by Parker without suggestion from him, but with his consent, Parker assuring him that it would not cost him anything, and that it was agreed and understood that Parker should pay all premiums, and Stacy should not be liable for them. In every case of disagreement between the testimony of Stacy and that of Parker, we have accepted the statement of Parker, as the trial court had a right to do.

The trial court found that after the settlement of February 9, 1894, when there was an agreed balance due Parker of $671.39, "said plaintiff (Parker) advanced to defendant (Stacy) various sums of money,

specified in plaintiff's original petition, aggregating the further sum of $699.08, each of said sums to bear interest from the date of its advancement at six per cent per annum, and that said first mentioned sum of $671.39 was to bear interest at six per cent per annum from February 9, 1894, and that said defendant agreed and promised to pay the same to plaintiff as above stated." There is no evidence in the record to support these findings in so far as they relate to any agreement or understanding between Parker and Stacy. No evidence of such agreement is to be gleaned from Parker's testimony, and Stacy's testimony is a denial of such agreement in any form. The $671.39 was agreed to be due, and with it went an implied contract to pay, and by operation of law it bore interest at six per cent from date, but further than this there is no evidence in the record to support these findings.

The trial court also found, referring to the money paid for premiums on the policies, "that said sums of money were so paid by plaintiff for defendant, as authorized and ratified by said defendant in said instrument of writing of April 17, 1897; that at the time said instrument of writing was executed defendant was hard pressed and unable to pay his indebtedness to plaintiff, and that plaintiff agreed to carry the indebtedness for defendant." The only evidence in the record which tends to support the finding of the court that the premiums were paid by plaintiff for defendant, is the statement of Parker, with reference to the first policy, that he "was to pay all premiums for Stacy," but the uncontradicted evidence showed that they were paid for his own protection and benefit, and at his own suggestion. It was his own suggestion that he take out the policies, and Stacy only consented that he might do so. Even this guarded statement is confined to premiums paid on the first policy. With reference to the original indebtedness of $671.39 Parker testified that he agreed "to carry it" for Stacy. He does not intimate how long, whether for a day, a week, a month or a year, or longer, but even this statement is limited to this particular indebtedness and has no reference to the premiums, as found by the court. We think that the only reasonable deduction to be drawn from the evidence most favorable to Parker is, that there was no agreement on Parker's part to extend the time of payment of the $671.39 for any definite time, and that the premiums were all paid by Parker for his own benefit, and not for Stacy in any sense that would create a liability upon Stacy to repay the amounts. As Stacy was the insured and Parker only the beneficiary, in a sense such payment would be for Stacy, and this is evidently what the witness meant.

A fair statement of the facts established by the undisputed evidence or fairly deduced from the testimony of appellee himself, rids the case of all difficulty. We will not undertake to discuss in detail the several assignments of error, which fairly present the objections to the judgment to be considered.

As to the original indebtedness of $671.39 arising out of the agreed statement of the accounts between the parties on February 3, 1894, it

was barred by the statute of limitation of two years at the date of the execution of the written instrument, April 15, 1897. (Swift v. Trotti, 52 Texas, 504.) The statement of appellee that he was to carry this debt, .without any evidence as to the limitation of the credit so extended, would not take it out of the operation of the general rule as to debts due on demand. The written instrument referred to was not such a new promise or acknowledgment of a debt, as to raise the bar of the'statute then complete. The written acknowledgment of a debt, in order to remove the bar of the statute, must be clear and unequivocal, and neither qualified by conditions nor limitations. (McDonald v. Grey, 29 Texas, 83.) From such acknowledgment the law will imply a promise to pay, but in order for the acknowledgment to have this effect it is necessary that it carry with it an acknowledgment of the party's present liability. An acknowledgment of the original justness of the claim is not sufficient. (Coles v. Kelsey, 2 Texas, 557). When construed in the light of the circumstances in which it was executed, the instrument referred to excludes any idea of 'personal liability on the part of Stacy, either in his mind or in that of Parker. Stacy was in infirm health and insolvent. During the three years elapsing since the agreement as to the indebtedness, Parker had made no demand for its payment. It is evident that he placed no reliance on Stacy's personal liability, but relied solely on the insurance policy he had taken out and the additional insurance he contemplated taking out, as security for his debt.

The trial court finds as a, conclusion of law—which is really, how-. ever, a conclusion of fact—that the object and purpose of this instrument was to keep the indebtedness alive until Parker should demand settlement or payment of the same. We think this conclusion, whether of fact or of law, entirely erroneous and unsupported by any evidence. The purpose of the agreement is clear. In the event of Stacy's death, Parker could only recover on the policies the amount of his debt, including principal and interest at six .per cent, and also the amount of premiums paid by him. (Cheeves v. Anders, 87 Texas,. 292; Goldbaum v. Blum, 79 Texas, 641, 25 Cyc., 706.) This was not satisfactory to Parker, so he had prepared the instrument in question which fixed the amount he would be entitled to receive out of the proceeds of the policies at Stacy's death. He wanted interest at ten per cent on the debt, which was provided for, to be due annually and to bear interest at the same rate thereafter. He wanted likewise ten per cent interest on the premiums paid and to be paid, also to be compounded, and in order to accomplish this it is provided that such premiums should be payable on January 1st after they are paid by him. Some confusion arises from the use of these terms, and they might import that these sums are payable by Stacy at such date, under which. construction they would certainly be barred, but to avoid this conclusion appellee insists, in his reply to appellant's supplemental brief, that the sole purpose of these terms was to give Parker interest on his future advancements, that is, premiums paid by him, and to compound the in-

terest, and in this we agree. The sole purpose of this instrument was to fix the amount which Parker might receive out of the insurance policies at Stacy's death, and with no purpose of either creating or keeping alive any personal liability on the part of Stacy. To such a case the law as stated in the opinion of the Supreme Court of the United States in Shepherd v. Thompson (122 U. S., 232) is applicable, and we are content to rest our conclusions on this branch of the case, upon the authority of that case, as much from the undoubted soundness of the reasoning as from the high respect due to all decisions of that court. In that case, Shepherd being indebted to John W. Thompson in a large sum, as evidenced by notes due March 10, 1875 and 1876, on June 21, 1877, executed an instrument pledging for the payment of the notes a certain claim held by him against the United States. The notes were barred in three years, and the suit was instituted after the completion of the bar of limitation against the notes, but within three years of the date of the execution of the instrument referred to. It was held that this instrument was not sufficient to raise the bar of limitation against the debt, in that it only provided a fund for the payment of the debt, and as the court says, "To imply from the terms of this instrument a promise to pay the debt himself would be, in our opinion, to construe it against its manifest intent, and to fritter away the statute of limitations."

We think it clear that no such idea was in the mind of either of the parties in this case. It is true that Parker stated in his testimony, that he did not accept the instrument as payment of Stacy's indebtedness. The literal truth of this statement is in no way inconsistent with the construction we have given it, in so far as it is interposed as a new promise or acknowledgment of the debt, to avoid the plea of limitation. The plea of limitation as to the $671.39 should have been sustained upon the grounds stated.

As regards the recovery of the premiums paid by Parker, we think it clear from the uncontradicted evidence that there never was any liability upon Stacy to repay them. They were paid by Parker for his own benefit, and he does not state that there was ever any understanding or agreement with Stacy or even any expectation on his part that Stacy was to be personally liable to him for their payment. The policies were taken out by him for his own protection. Stacy consented, it is true. Why should he not? It was costing him nothing. The extremely contingent interest of Stacy in the policies after taking out the amounts provided for in the instrument referred to, was clearly not in the mind of either of them. The first policy was practically exhausted by the charges against it at the date of the execution of this instrument, and as to the second policy Parker does not even state that the premiums thereon were paid "for Stacy." The subsequent dealings between the parties adds strength to this view. There still continued a running account between Parker and Stacy, debits and credits on each side. What Stacy owed Parker he promptly paid, and what Parker owed Stacy he also paid him. There was never any demand or request

on the part of Parker to Stacy to pay any part of either the debt of $671.39, or the premiums, or any part of either. Appellee explains this by the alleged fact that these debts were not due until Stacy's death. We can get nothing to support this contention from any part of the testimony. The instrument itself does not so provide, and the trial court expressly finds that this indebtedness was due at any time Parker chose to demand payment, and that he not having made such demand until the insolvency of the insurance company, it was not due until then, a conclusion wholly untenable. The clearly apparent reason of Parker's failure to demand payment is that Stacy did not owe it. Our conclusion is that, on the uncontradicted evidence, there was never at any time any personal liability upon Stacy for the repayment of the premiums.

Our conclusion is further that even if the written instrument referred to can be construed as imposing a personal obligation to pay either the original debt or the premiums, any action for the recovery of either was barred by limitation long before the institution of this suit—twelve years after the date of the instrument—except possibly premiums paid within four years. If there was such liability, when was it due? Appellee says at Stacy's death. The trial court finds that it was due whenever demanded by Parker. We can find nothing in the evidence to support the conclusion that Stacy himself, or his estate, was to pay at his death. If the trial court is correct, it was a demand obligation and due at its date. Parker could not postpone its maturity by postponing his demand. We might agree with appellee in his contention that a debt due and payable upon the happening of a contingency, that is, in the present case, the payment of the policies, became payable at once upon the ascertainment of the fact that the contingency can never happen, but we regard this as of no force in the decision of the present case. This is clear from our conclusions above stated.

We conclude that the appellee, upon the uncontradicted evidence is not entitled to recover, and the court should have so declared. Therefore, the judgment of the trial court should be reversed and judgment here rendered for appellant, defendant in the court below, and it is so ordered.

*Reversed and rendered.*

Writ of error refused to Parker.