COLE et al. v. BROWNING.

No. 14683.

Court of Civil Appeals of Texas.
Fort Worth.

April 20, 1945.

Rehearing Denied May 18, 1945.

James & Conner, of Fort Worth, for appellants.

W. S. Bramlett and Farley Reasonover, both of Dallas, for appellee.

BROWN, Justice.

Bryan W. Browning was first married to Grada Browning and two children were born to this union: Bryan W., Jr., and Joyce.

Mr. Browning was an industrial engineer and his business called him to many places in some states and into several states, from time to time. He purchased a home in Fort Worth, Texas, while he and his wife, Grada, were living together. They were divorced and Mrs. Grada Browning continued to occupy the home place.

Mr. Browning was married to Ruby Browning in Tyler, Texas, on October 6, 1936. Browning and his said second wife were living in the State of Indiana, and from the evidence, appear to have had no fixed home, but simply lived in temporary quarters, such as tourist courts or furnished apartments in whatever cities he found employment.

While so living in Indiana on March 6, 1940, Browning purchased a life insurance policy on his life, from The Equitable Life Assurance Society of the United States in the principal sum of $3,000; the beneficiary named being the said second wife, Ruby B. Browning.

On or about May 29, 1943, the bonds of matrimony between Browning and his second wife, Ruby, were dissolved in a court of competent jurisdiction in Indiana.

Prior to the rendition of the divorce decree, on February 8, 1943, Browning and wife entered into a property rights settlement which recites that the suit for a divorce was being brought by Browning, and contains the following provisions:

"This agreement entered into this 8th day of February, 1943, between Bryan Watson Browning, Sr., first party, and Ruby B. Browning, second party,

"Witnesseth:

"Whereas, first and second parties are respectively husband and wife, having no children; and

"Whereas, party of the first part contemplates the filing of a divorce action in Vigo County, Indiana, against party of the second part and the carrying out of such action to a conclusion, and

"Whereas, it is the desire of the parties hereto to agree upon the distribution of their properties and to make provision for the care, maintenance and support of said party of the second part; and

"Whereas, after making such provision the parties hereto desire to release each other mutually from all claims for care support or maintenance, each releasing to the other all claims of dower, year's support, distributive share, the right to administer each other's estate in case of the death of either, and all rights of any and every kind whatsoever that either may now have or at any time in the future may have in the property of the other party, as husband or

wife, or as widow or widower, or the survivor of either of them;

"Now, therefore, It is mutually understood and agreed that the said parties shall remain separate and apart and neither shall molest the other. The first party has paid to the second party the sum of Five Hundred Thirteen and 60/100 ($513.60) Dollars, the receipt of which is hereby acknowledged, and has paid the additional sum of One Hundred and Fifty ($150.00) Dollars to the attorney for the second party. First party does further hereby release any and all other claims against the party of the second part and against her property. The party of the second part has hereby, as hereinabove set forth, released all claims that she has or may have against the first party or his property.

"In witness whereof the said Bryan Watson Browning, Sr. and Ruby B. Browning have hereunto set their hands this 8th day of February, 1943.

　　　　"Bryan Watson Browning, Sr.
　　　　"Ruby B. Browning.
"A. J. Zaner
"Leonard D. Slutz"

Mrs. Ruby Browning testified that she moved to St. Louis, Missouri, in February, 1943, and since March, 1943, she has made her home in the American Hotel, in St. Louis; that she had a room there. She testified that she came to her mother's home in Handley, Texas, on May 17, 1943, having been called there by reason of the illness of her mother; that she then obtained employment in the "Consolidated" plant near Fort Worth for a short while and that at the time of the trial of this cause she was living in Longview, Gregg County, Texas, where she is employed as a book-keeper. She testified that she claimed St. Louis, Missouri, as her home, and that by reason of the fact that the United States has taken over the hotels in St. Louis, because of war conditions, she has "made a permanent reservation" at the named Hotel, for a room and that some of her things are stored in such hotel. She has not occupied a room in such hotel nor has she lived at any other place in Missouri since May, 1943, when she left there and came to her sick mother.

Browning did not pay the annual premium which fell due March 6, 1943, and his demise on September 14, 1943, came at a time when under the provisions of the policy it was still in full force and effect. Shortly before Browning's death in Dallas, Texas, he had come to Texas to carry on work for which he had been employed.

Mrs. Ruby Browning had actual possession of the insurance policy, when Browning died, and she made proof of his death.

Grover C. Cole was appointed temporary administrator of Browning's estate and was empowered to sue for and collect whatever might be due on the said policy, and he brought suit on October 18, 1943, against the insurer and Mrs. Ruby B. Browning, alleging the death of Browning, the existence of the insurance contract and the fact that it was in force, and alleging that Ruby Browning, the named beneficiary and divorced wife, had no insurable interest in Browning and prayed for a recovery as said administrator.

The insurer filed an answer and bill of interpleader in which it averred that the insured was survived by two minor children, Bryan W. Browning, Jr., and Joyce Browning; that it stood ready to pay the proceeds of the policy to whomsoever it may be due, but that the conflicting claims of the said administrator, the former wife and named beneficiary, and the two surviving children rendered it impossible to pay such sum to any claimant without subjecting it to the claim and demand of the other claimants, and it prayed for the privilege of paying the proceeds into the treasury of the court, for its full discharge, for the cancellation of the insurance policy and an injunction restraining the claimants from prosecuting any suit or proceeding in any court in any State, against said insurer, except in the instant suit.

Ruby Browning answered admitting all allegations excepting such as affected her right of recovery. She denied that she had no insurable interest in the insured and averred that she, since the divorce decree was rendered, has been the beneficial owner and holder of the insurance contract; that she had possession of the policy of insurance since its issuance and is entitled to the proceeds of same together with all accrued dividends thereon.

She alleged that at the time of the death of the insured and at this time she was a citizen of the State of Missouri and her rights to the proceeds of the insurance contract have been fixed by the Acts of the Congress of the United States and the Supreme Court thereof. She further averred that the contract of insurance was entered into in the State of Indiana and that

her rights under the contract are fixed by the laws of Indiana.

We do not undertake to state the substance of subdivision C. of her pleading but here copy same:

"(c) Long prior to the death of this defendant's husband the said insurance policy and the proceeds to accrue therefrom was assigned to this defendant who ever since and now holds right thereto, and further in connection with said divorce decree a property settlement was had and entered into between this defendant and her said husband whereunder this defendant's right to said policy and the proceeds thereof was recognized and reaffirmed; and in this connection this defendant avers that the premiums on said policy were payable in the State of New York, and that upon the facts hereinbefore set forth, whether her rights to the proceeds of said policy are tested by the laws and decisions of the United States as set forth in subdivision (a) of this paragraph, or by the laws of Indiana as set forth in subdivision (b) of this paragraph, or by the laws and judicial decisions of the State of Texas, and particularly Article 5048 of the Revised Statutes of Texas, or by the pertinent laws of the State of New York, nevertheless she was upon the death of her husband, ever since has been and now is entitled to the proceeds of said insurance policy."

If this last quoted paragraph constitutes an attempt to plead the laws of the State of New York as fixing the pleader's right of recovery, we are not convinced that the allegations do so, but of this we will have something more to say.

The two minors having no guardian, the trial court appointed the Honorable George M. Conner as their guardian ad litem and he answered for them claiming the proceeds of the insurance policy. By supplemental petition, the administrator prayed that the money be awarded to the said minor children and in the alternative to the administrator.

It was stipulated that Ruby Browning came to Texas from St. Louis, Mo., during the latter part of April, 1943, to attend her sick mother who lived in Tarrant County, Texas, and that she has continued to remain physically in Texas from that date down to and through September 14, 1943; and that Bryan W. Browning came to the State of Texas from his place of business at Terre Haute, Indiana, on August 21, 1943, to perform a job for a mercantile firm in Dallas, Texas, as an industrial engineer, and that he became ill about two weeks after he arrived in Dallas, was taken to a hospital and died in such hospital, in Dallas, Texas, on September 14, 1943.

On March 16, 1944, the trial court made an order which is approved and signed by all parties and all counsel both as "to form and substance."

This order recites that the Insurer's bill of interpleader is properly filed; that it is allowed an attorney's fee of $100; that said insurer pay into the treasury of the court the balance of $2900; that all of the other parties to the suit "set up and prosecute in this cause all and every the rights and claims which each such party individually or in any representative capacity may have against The Equitable Life Assurance Society of the United States, to the policy of insurance described in the pleadings of the cross plaintiff, or the proceeds thereof, and such parties, and each of them, and their attorneys, agents and servants, are hereby perpetually enjoined and restrained from instituting or prosecuting any suit or proceeding whatever in any state court or in any United States court, or any forum wherever situated, other than in this suit, to enforce any right or claim against the cross plaintiff (the Insurer) to such policy of insurance or the proceeds thereof."

The order and judgment further discharged the said insurer from all and further liability to all the parties, "under or on account of the said insurance policy or the proceeds thereof, but the claims heretofore asserted by said parties are hereby transferred to the proceeds of said policy now on deposit in the registry of this court, and said policy of insurance is hereby cancelled and is of no further force and effect, and the defendant, Ruby B. Browning, is directed to deliver such policy to cross plaintiff or its attorneys."

All of the provisions of this order were carried out and the parties thereafter contested for the said proceeds, and on December 18, 1944, the cause being tried to the court, judgment was rendered denying recovery by the administrator and the two minor children and awarding recovery of the monies deposited in the registry of the court to Ruby Browning.

An appeal was taken by the administrator and minors.

Four points are presented and the first three are bottomed on the contention that

the trial court erred in awarding the proceeds of the policy to Ruby Browning and in refusing to award same to the said minor children or, in the alternative, to the administrator, because Ruby Browning had no insurable interest in the insured, her divorced husband, and the awarding of such monies to Ruby Browning violates the public policy of the State of Texas.

The fourth point contends that the trial court erred in holding that the rights of the parties in respect to the funds should be decided according to the Indiana law.

Appellee's brief sums up her contentions saying that she is a citizen of the State of Missouri; that the insurance contract was made in Indiana and that under such State's laws she is entitled to the proceeds of the policy; and that long prior to the death of the insured the policy had been assigned and delivered to her and she is entitled to the proceeds thereof under (1) the Acts of Congress, the Constitution and decisions of the Supreme Court of the United States, (2) the laws of Texas, (3) the laws of New York, where the premiums were payable, and (4) the laws of Indiana.

Two counter points are urged by appellee:

"(1) It was not error for the trial court to:

"(a) Enter a 'take nothing' judgment against the temporary administrator.

"(b) Enter a 'take nothing' judgment against the guardian ad litem and the minors represented by him.

"(c) Enter judgment awarding appellee the insurance funds deposited in the registry of the court."

The second point will be stated under our discussion of it later in the opinion.

 Appellee asserts that the evidence establishes that she was named beneficiary in the policy and will support, if it does not compel, the factual finding that she was the owner or assignee of the policy and its proceeds at the time of and long prior to the death of the insured.

We are unable to agree with the contention that appellee has any interest by or through any assignment of the contract.

There is no competent evidence to support the theory of an assignment or of actual ownership.

No testimony disclosing an oral or written assignment was before the trial court.

The mere fact that appellee was named as beneficiary when the contract was entered into and at a time when, apparently, the matrimonial sea was not disturbed by the winds of discontent and ill will, and the physical possession of the contract by appellee, obtained evidently when all was calm, proves nothing and affords no inference justifying a conclusion that appellee was the owner of the contract.

 The very contract expressly provides that if there be no written assignment thereof delivered to the insurer the insured has the right to change the beneficiary at will. Under such conditions as prevailed in the instant suit, appellee, as beneficiary, had no vested interest in the contract. It must be borne in mind also that friction arose between the insured and appellee prior to the premium anniversary that fell due on March 6, 1943.

 As early as February 8, 1943, when divorce proceedings were contemplated and preparation for the filing of such a suit was being made by the insured, appellee and the insured entered into a property rights settlement because of such pending matters, and this contract of settlement discloses on its face that each spouse released to the other "all claims for care, support or maintenance * * * all claims of dower, year's support, distributive share, the right to administer each other's estate in case of the death of either, and all rights of any and every kind whatsoever that either may now have or at any time in the future may have in the property of the other party, as husband or wife, or as widow or widower, or the survivor of either of them."

Nor may we pass lightly by the fact that the insured, during these unfortunate and unpleasant hours, did not pay the annual premium that fell due on March 6, 1943, and appellee, who contends that she had possession of the insurance contract, during all such times, did not pay, nor did she offer to pay the said premium.

Could it be successfully denied that the insured had some property rights in the policy of insurance when the settlement agreement was consummated? We think not.

And if, as is contended, appellee had any property rights therein because the three annual premiums paid on the policy of insurance were paid when the parties were husband and wife, and out of funds owned jointly by the spouses, does it not reason-

ably appear that appellee intended to release and did release all such rights? We believe so.

But we do not believe that it is necessary to hold that Ruby Browning has released all rights that she may have had in so far as the insurance policy is concerned in order to reach the conclusion that we have reached in this case.

We do know that the insured had a far greater interest in and rights under the insurance contract than did Ruby Browning, who was named beneficiary, even when she was his lawfully wedded wife. We know that, under the provisions of the policy, he could, without her consent and even against her will, change the beneficiary unless he had made a written assignment of the contract and same was filed with the insurer; and we know that he could at any time have permitted the contract to lapse for non-payment of the premiums. And all of this is true even though the premiums that were paid came from community funds.

■ We are of opinion that this cause should be determined according to the public policy of the State of Texas.

We are not interested in the fact that Ruby Browning claims that she was, at all times pertinent to the issues before us, a citizen of the State of Missouri, nor are we interested in the contention that when the insured died, he was actually a citizen of the State of Indiana.

The contract of insurance was delivered to the insured in Indiana, it is true, but it was not only not necessarily performable there, it was such a contract as that it might never have matured or that it might mature and its full performance be required in any State in the United States, where the insured may have died, or in any State, after the insured's death, where service could be had upon the maker of the contract—the insurer. That is what happened—the insured died in the State of Texas, where he was temporarily living, and the contract then matured. An administrator of his estate was appointed by a Texas Court of competent jurisdiction, with power and authority to sue the insurer and collect the proceeds of the matured contract. The suit was properly brought against the insurer and service properly had upon one of its authorized agents, and Ruby Browning, the named beneficiary, was also made a party defendant, and although she had the policy of in-

surance in her possession, she answered in the suit and not only submitted herself and her cause of action and rights to the Texas court, she signed and agreed to the rendering of an order and judgment, impounding the proceeds of the policy in the registry of such court, directing her and all other claimants to contest for such proceeds in such court and in no other, ordering her to deliver up to the insurer the policy in her possession and enjoining her and all other claimants from bringing any kind of suit or proceeding growing out of such policy in any court other than such Texas court. She complied with such agreed judgment.

■ The State of Texas has established a fixed policy with reference to its own citizens, by and through which it refuses to permit one who has no insurable interest in a living person to be and become the beneficiary in an insurance policy written on the life of such living person. Such cases as Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274, 47 Am.St.Rep. 107, and Wilke v. Finn, Tex.Com.App., 39 S.W.2d 836, and cases cited in these opinions declare this public policy.

■ We do not believe that the State of Texas, where its public policy is involved, should grant or give to some person, who is temporarily residing in Texas, rights and privileges that it refuses to give or grant to its own citizens.

It must be conceded by all that a person temporarily residing in Texas is entitled to the protection and benefits of the laws and the courts of this state, and is likewise subject and amenable to its laws and its courts.

Furthermore, we believe that in such a case as is before us, where the insured and the named beneficiary are both temporarily residing in the state of Texas at the time of the death of the insured and the maturity of the insurance contract occasioned by such demise, the state of Texas had and acquired a legitimate governmental interest in the matter of the status of these parties and the right of the divorced wife to assert any claim to the proceeds of the contract.

See Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Id., 5 Cir., 116 F.2d 261, 262; Id., 5 Cir., 123 F.2d 550; Alaska Packers Ass'n v. Industrial Accident Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044; Pacific E. Ins. Co. v. Industrial Accident

Comm., 306 U.S. 493, 59 S.Ct. 629, 83 L. Ed. 940, 941; Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, 74 A.L.R. 701; Pink v. A. A. A. Highway Express, Inc., 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152, 137 A.L.R. 957; Clark v. Williard, 292 U.S. 112, 54 S.Ct. 615, 78 L. Ed. 1160; Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274, 47 Am.St.Rep. 107; 134 A.L. R. pp. 1472, 1473; and Am.Jur., vol. 11, pp. 987 and 1015–1019; all of which tend to support our views.

In Home Ins. Co. v. Dick, cited supra [281 U.S. 397, 50 S.Ct. 342], Mr. Justice Brandeis, speaking for the Court, said: "Doubtless, a state may prohibit the enjoyment by persons within its borders of rights acquired elsewhere which violate its laws or public policy."

■ We, therefore, do not find ourselves concerned with the fact that the State of Indiana, where the contract of insurance was delivered to the Insured, and the State of New York, where the Insurer has its domicile, both permit living persons who have no insurable interest in another living person to be and become the beneficiary in a policy of life insurance written upon the life of such other person.

The State of Texas has declared, in such cases as Whiteselle v. Northwestern Mutual Life Ins. Co., Tex.Com.App., 221 S.W. 575, and Hatch v. Hatch, 35 Tex. Civ.App. 373, 80 S.W. 411 (writ refused), that a decree of divorcement of a wife terminates her insurable interest as such.

Believing that, under the facts in this case, Ruby Browning, the divorced wife of the insured and named beneficiary in the insurance contract, was and is subject to the public policy of the State of Texas, when attempting to recover the proceeds of such insurance contract in and through the courts of Texas, we hold that the judgment of the trial court awarding such to her was error.

The second and last contention of Ruby Browning is that, if the public policy rule invoked is in force in Texas, then the cause of action should be ordered dismissed and the parties remitted to the State where the insurance contract was entered into for a determination of their rights and the resulting relief.

Under the record before us this could not be done, even if there were just cause for so doing. As we have shown, all parties submitted themselves to the jurisdiction of the trial court in Texas and agreed to and signed an order and judgment which obligated them to contest for the proceeds of the insurance contract in such trial court and in no other forum, and the contract of insurance was, under such order, delivered to the insurer, and all parties claimant were enjoined perpetually from attempting to sue or recover anything from the Insurer under such contract.

Neither Ruby Browning nor any other claimant excepted to or appealed from such order. It was an agreed order and judgment.

In the light of that order neither Ruby Browning nor any other claimant could institute any proceedings predicated upon such insurance contract in any other forum.

■ As to the applicability of the laws of the State of New York, on the theory that the premiums were made payable in the State of New York and the contract was thus performable in such State, we will say that this contention seems untenable for the reasons that, the policy does not absolutely require the payment of the premiums in such State. It provides: "All premiums are payable * * * at the Home Office or to any duly authorized Cashier of the Society, in exchange for a receipt signed by the President, a Vice-President, Secretary or Treasurer, and countersigned by said Cashier."

Most certainly the contract contemplates the existence of such "authorized cashier" in places other than within the walls of the Home Office, and there being no limitation as to the place it cannot be said that such "cashier" must be within the borders of the State of New York. Furthermore, the contract before us did not mature in the State of New York, and no suit on same was brought in any court of such state, nor was any suit brought in any court in the State of Indiana, where the contract was delivered, and same did not mature in such state. The insurance contract before us provides that if the legal representative of the insured is not expressly designated as beneficiary, any part of the proceeds with respect to which there is no designated beneficiary living, when the insured dies and no assignee is entitled thereto, same will be payable in a single sum to the children of the insured who survive, in equal shares.

Ruby Browning neither having the interest of an assignee nor as beneficiary,

the proceeds of the contract should be paid to the two said surviving children of the Insured.

The judgment of the trial court is reversed and judgment is here rendered for Bryan W. Browning, Jr., and Joyce Browning, share and share alike; and the judgment denying recovery by the temporary administrator is affirmed.