W. C. Heath and R. E. Huff filed this suit in the district court of Wichita county in trespass to try title against A. H. Brown and other defendants, to recover a certain tract of land in Wichita Falls, known as block G of the water power lands. The appellant, Mrs. Montgomery, intervened and offered to defend the title of Brown, whom she claimed was her tenant. By an amended petition, the plaintiffs abandoned their action against all parties except Mrs. Montgomery and Brown. In addition to a formal petition in trespass to try title, they specially pleaded the statutes of limitation of three, five and, ten years (Rev.St. 1925, arts. 5507, 5509, 5510).
The suit was tried before the court without a jury, resulting in a judgment for plaintiffs. Mrs. Montgomery alone has appealed.
The court filed no findings of fact. No question is made here as to the sufficiency of the pleadings.
The record shows that the block of said property in question is a part of a survey of land originally patented to John A. Scott. Scott died before the land was disposed of, and was survived by his wife and four children. One of the children, John A. Scott, Jr., conveyed his interest in the estate to Sarah E. Scott, who afterwards married H. P. Lee. The other heirs of John A. Scott, deceased. executed a power of attorney to John A. Scott, Jr., to act for them in the sale of all lands in Wichita county, Tex., and to execute necessary conveyances to the purchasers thereof. As such attorney in fact, John A. Scott, Jr., executed a plat of the town of Wichita Falls and a dedication deed. Between the platted portions a strip of land comprising about 40 acres on both banks of the Big Wichita river was not platted, and is called the "water power property," and is referred to as such in deeds subsequently made. The heirs of Scott then conveyed to M. W. Seely an undivided one-fourth interest in the water power property and certain other lands not involved in this suit. Thereafter, Seely conveyed a one-eighth interest to H. Judd and N.W. Bliss. Thereafter, Bliss, acting under a power of attorney from Judd and wife, conveyed this one-eighth interest to John A. Foreman, specifically describing the water power as:
"40 acres of land, more or less out of section 15, patented to John A. Scott, described as follows: All the land lying on both sides of Big Wichita river in said survey, and between the blocks of the town of Wichita Falls on the north side of the river and the blocks on the south side, including the privileges of the water power."
Soon thereafter Seely conveyed his other one-eighth interest in the water power property to F. P. Knott, who, in turn, conveyed the said interest to Wichita Water Power Company. Through a trust deed executed by the Wichita Water Power Company upon said interest, and a sale by the trustee under *Page 326 
the power therein contained, and a trustee's deed, this one-eighth interest was also vested in John A. Foreman. Numerous other deeds and documents were introduced in evidence which have no bearing upon the issues to be decided, and will not be set out. The result of the transfers above mentioned is that John A. Foreman, by an unbroken chain of title, acquired an undivided one-fourth interest in the water power property.
The plaintiffs also introduced a series of deeds showing that the remaining three-fourths undivided interest in the water power property had become vested in G. T. Howard, Z. H. Postles, H. M. Truehart, J. P. Smith, and F. P. Knott. It was shown in behalf of Mrs. Montgomery that after the city of Wichita Falls was laid off and platted, the parties who owned the land upon which the town site was platted executed a bond for title to a certain interest in all the land in question to R. E. Montgomery, trustee, and in pursuance of said bond they afterward executed a deed to R. E. Montgomery, trustee, who was at that time the husband of the appellant in this suit.
On May 5, 1888, a judgment was entered in the district court of Wichita county partitioning the lands comprising the town site between the various claimants, and the water power tract was recognized in said decree; R. E. Montgomery, however, was not a party to that suit. John A. Foreman had recovered a judgment against H. M. Truehart, J. P. Smith, G. T. Howard, and Z. H. Postles, and, under an execution sale based upon said judgment, had purchased the interests of both Knott and Smith in the water power property. The decree in the partition suit set aside to Foreman an undivided 25/64 of the water power, to Truehart an undivided 15/64, and to Howard and Postles an undivided 24/64 interest. This was cause No. 199 upon the docket of the district court of Wichita county. The commissioners appointed to make partition divided practically all of the water power property except block G, as shown upon the plat made by the commissioners and filed in that suit, and which is a part of the statement of facts here. They found that block G was not susceptible to partition, and recommended that block G and certain other blocks in the immediate vicinity thereof be sold as prescribed by law, and that the proceeds be apportioned among the parties to the suit, except Smith. Judgment was entered accordingly, and block G was sold by the sheriff of Wichita county under the judgment and was purchased by Foreman.
On March 2, 1892, Foreman conveyed the whole of block G to Falls City Milling Company, a corporation, describing it as follows:
"Block G of the 40 acres of land out of sections 15 and 17. John A. Scott, attached to the water power of Wichita river as platted and land out by the commissioners for partition in the case of John A. Foreman v. H. M. Truehart, G. T. Howard, Z. H. Pestles, and J. P. Smith, No. 199, on the docket of the district court of Wichita county, Tex., and fully set out in decree of said court on record in court minute book 1, pp. 618 to 621, inclusive, to which reference is hereby made for description, and being that unilateral block of ground inclosed between Wichita street and the Big Wichita river, and between the F. W. D.C. R. R. right of way and the unnamed street that leads from Wichita street to the wagon bridge of the said Big Wichita river."
A reference to the commissioners' plat shows that block G includes land on both sides of the river.
On May 11, 1894, block G was levied upon as the property of Falls City Milling Company, and sold at sheriff's sale, and by the sheriff conveyed to Victor Milling Company, a corporation. This sheriff's deed describes the property as follows:
"All of block G of what is known as the water power property, a plat of which is recorded in the county of Wichita, volume 1, p. 619, district court minutes of Wichita county, Tex."
This deed was filed for record May 23, 1894. On August 20, 1904, Victor Milling Company, as a corporation, conveyed all of block G to the First National Bank of Wichita Falls, Tex., by W. C. Heath, vice president and general manager of the milling company. To the left of his signature appears the following: "Witnesses at the request of grantor: Harley Heath, Alena A. Heath." The acknowledgment of Harley Heath as a witness was taken by R. E. Huff on August 25, 1904. It was shown that the deed so executed was in fact a mortgage given to secure the grantee bank for certain indebtedness due it from the Victor Milling Company. The title remained in that condition until August 25, 1921, when the bank conveyed all that part of block G lying south of the Wichita river to R. E. Huff and W. C. Heath, which deed was filed for record August 20, 1921. The consideration recited therein is as follows:
"For and in consideration of the sum of one and no/100 dollars in hand paid by R. E. Huff and W. C. Heath and other valuable considerations, to wit: The payment of all sums of money due by Victor Milling Company to the bank, which payment was made several years ago, but reconveyance of the property overlooked at the time."
The deed also contains this recital:
"This conveyance is made to said R. E. Huff and W. C. Heath because they are the owners of the capital stock of said Victor Milling Company, which is now out of business."
It is contended by the appellees that by reason of the facts above stated, they have shown their ownership of block G by an unbroken chain of title from the sovereignty of the soil. They further contend that between the purchase of the property by the Victor *Page 327 
Milling Company under the execution sale against Falls City Milling Company, made by the sheriff on May 11, 1894, and the reconveyance to them by the First National Bank of the property on August 20, 1901, they have also acquired title under the statutes of limitation of five and ten years.
The appellee Heath testified that after the Victor Milling Company bought the property in May 1894, they commenced to make improvements on block G immediately; that the company's mill building was located on block 76, across the street from, and north of, block G, but that in connection with the mill the company by proper improvements used all of that part of block G lying north of the river as a wagon yard, and that they put in a pumphouse on the bank of the river, and that the wagon yard was in operation continuously from the middle of June, 1894, and was in their possession until the 20th of August, 1904, when the property was conveyed to the bank. He further testified that they claimed this property under the sheriff's deed in 1894, and paid the taxes every year until they disposed of it; that their use of it as a wagon yard and for the operation of their pumphouse was open and notorious; that they never had any trouble nor heard of any adverse claim by any one until three or four years before this suit was filed.
It is unnecessary to discuss the question of title under the ten-year statute, but we think the evidence clearly establishes title to the whole of block G in the Victor Milling Company under the five-year statute prior to the time of the conveyance to the bank.
If it be admitted that the description of block G set out in Foreman's deed to the Falls City Milling Company is not sufficient to include that part of the block in litigation lying south of the river, nevertheless the whole block is described in and conveyed by the sheriff's deed which conveyed the entire block from that company to the Victor Milling Company, and the possession and use by the last-named company of the north half of the block for the required time is sufficient to vest title in it to the whole block under the five-year statute; so we deem it unnecessary to discuss the effect of the Foreman deed to the Falls City Milling Company.
The plaintiffs' chain of title is next attacked upon the ground that the deed from the Victor Milling Company to the bank, which was shown to be only a mortgage, was proven by one of the subscribing witnesses before the plaintiff R. E. Huff as a notary at a time when he was the president both of the grantor Victor Milling Company and the grantee bank. Being an officer in these two corporations, it seems, has the effect of rendering the acknowledgment void (W. C. Belcher L. M. Co. v. Taylor [Tex.Com.App.] 212 S.W. 647), and the registration of such an instrument is not notice under the registration laws, but there is no question of notice connected with the instrument, and even if it had not been acknowledged at all, it is valid as a conveyance between the parties to it. McLane v. Canales (Tex.Civ.App.) 25 S.W. 29. Having been recorded for more than ten years before the filing of this suit, it was, under the record before us, admissible in evidence by express provision of the validating act of 1907. V. S. C. S. 3700; R.S. 3726. No objection was made by the appellant to its introduction in evidence. Since it was shown to have been only a mortgage, though in form a deed, the reconveyance of the block by the bank to the plaintiffs was, in legal effect, a release of the lien, and the result is that the legal and equitable title was in the Victor Milling Company, a corporation. But aside from these two conveyances, we think plaintiffs could maintain this action. It was shown by uncontroverted evidence that after the Victor Milling Company's plant burned in December, 1903, the corporation ceased to function as a milling company, though it continued to operate the wagon yard for an indefinite period. Appellant states that at all times the plaintiffs owned all or practically all of the capital stock of the milling company; then, as the shareholders of the defunct corporation, they became the owners as tenants in common of its property, subject, of course, to the claims of any creditors; and it does not appear that the company had any creditors. So, under the rule that one or more tenants in common may sue in trespass to try title, they were such owners as were entitled to recover the land in their own names, but of course, for the benefit of themselves and their cotenants, if any.
It follows, therefore, that there was no outstanding superior title shown either in the bank or the defunct milling company. The record does not disclose when the Victor Milling Company ceased to function, and in support of the court's judgment, we must presume that it was not until after the decree was entered in the partition case of Truehart v. Montgomery, on February 25, 1913. The record shows that Truehart as a part owner in the town site sued R. E. Montgomery and numerous other owners of the town site, including the plaintiff R. E. Huff, for partition. It further shows that Huff was one of the attorneys who represented the defendants in that suit, but that in his capacity as a defendant none of the common property was partitioned to him. He was decreed to be the owner of certain lots which he claimed adversely to Truehart and his codefendants, and as to him and his property rights the suit was one in trespass to try title. Neither the bank nor the Victor Milling Company were made parties defendant in that suit, although the deed from the company to the bank was then on record. While Huff was a stockholder in both corporations, they were as to him *Page 328 
separate entities, and their title to block G was in no degree impaired by that judgment. Since neither the bank nor the milling company were parties to that suit, their title to block G was in no way affected by the judgment which attempted to vest the title to the land in question here in Montgomery. Holloway v. McIlhenny, 14 S.W. 240, 77 Tex. 657; Oliver v. Robertson, 41 Tex. 422; Ship Channel Co. v. Truly, 45 Tex. 6.
The judgment is affirmed.