## MARY L. BRAMMER V. H. S. WILDER.

No. 6043.  Decided February 15, 1933.
(57 S. W., 2d Series, 571.)

*Campbell, Myer & Myer,* of Houston, for appellants.

A written agreement of dissolution of a partnership, containing the full terms of the settlement and deliberately executed by the partners, is binding on them, in the absence of fraud or mistake.  30 Cyc., p. 677; 47 C. J., p. 1109 et seq.; Green v. Waco State Bank, 78 Texas, 2, 14 S. W., 253; Ruth v. Flinn, 28 Col. App., 171, 142 Pac., 194.

Under the terms of the policy the partnership had only an expectancy in the life of J. L. Brammer, and it devolved upon the partnership, at the death of Brammer, to prove that it was still a valid subsisting and existing partnership, and unless the partnership could discharge this burden of proof it was not entitled to the proceeds of the policy.  30 Cyc., pp. 402-413; Pepper v. Pepper, 115 Ky., 520, 74 S. W., 253; Clifton v. Boyse Oil Co., 39 Texas Civ. App., 188, 87 S. W., 182.

*Robert G. Harris,* of San Antonio, and *Sam Streetman,* of Houston, for appellee.

The Court of Civil Appeals did not err in holding, as it did, that the firm of Brammer & Wilder was not dissolved prior to the date of the death of the partner, J. L. Brammer. Am. & Eng. Enc. of Law (2d Ed.), vol. 22, p. 264; First Natl. Bank v. Conway, 67 Wis., 210, 30 N. W., 215; Root v. Murry Tool Co. (Com. App.), 26 S. W. (2d) 189; Scott v. Kress (Civ. App.), 191 S. W., 716; Seufert v. Gille, 230 Mo., 453, 131 S. W., 102, 31 L. R. A. (N. C.), 471; Rowley on Partnership, vol. 1, p. 771, quotation in note.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This case is before us on certified questions from the Court of Civil Appeals at Galveston. The certificate fully states the case. It is as follows:

"We deem it advisable to certify for your decision the hereinafter stated questions which arise upon the following statement of facts disclosed by the record in this case, which is now pending in this court on motion for rehearing:

"The suit is brought by appellant as Independent Executrix and sole devisee of the estate of J. L. Brammer, deceased, against the appellee, H. S. Wilder, surviving partner of the firm of Brammer & Wilder, to determine the ownership and right of possession of the proceeds of a policy of life insurance on the life of J. L. Brammer issued by the Aetna Life Insurance Company on July 4, 1926, in which the firm of Brammer & Wilder is the named beneficiary.

"The pleadings and evidence sustain the following conclusions of fact upon which the controversy arises:

"The co-partnership firm of Brammer & Wilder was created in May, 1924, to carry on the business of the construction of roads, bridges, paving, sewers, waterworks, and such other kinds of general construction work as the partnership might desire to undertake. Each of the partners contributed one-half of the capital of the firm, and by the terms of the partnership agreement had an equal share in the profits of the business, and were equally liable for its losses. The partnership agreement contains the following provisions:

" 'It is mutually agreed between the parties hereto that this partnership contract may be terminated at any time at the will of either party hereto, by giving thirty (30) days written notice to the other party of his intention to terminate the partnership, or the partnership will be terminated by the death of either of the parties hereto.'

"The business of the firm seems to have been successfully and profitably conducted, though there has been no final settlement of its business affairs.

"In 1926 a controversy arose between the firm and Limestone County in which that county asserted a claim for damages against the firm in a large sum for failure to comply with a road-building contract between it and the county. With this claim pending, each of the members of the firm, on July 4, 1926, had his life insured in favor of the firm for $25,000.00. Each of these life insurance policies contains the following provisions:

" 'During the lifetime of the insured the right to receive all cash values, loans, and other benefits accruing hereunder, to exercise all options and privileges described herein and to agree with the company to any changes in or amendment to this policy shall vest alone in the insured (herein called the life owner), subject, however, to any assignment by said life owner.' * * *

" 'The beneficiary may be changed as often as desired, and such change shall take effect on receipt at the Home Office of the Company, before the sum insured or any installment thereof becomes due, of a written request accompanied by the policy for endorsement. If any beneficiary dies before the insured, the interest of such beneficiary shall vest in the life owner alone unless otherwise provided herein.'

"No change was made in the beneficiary named in either of these policies after the organization of the corporation.

"The premiums of each of these policies were paid by, or out of the revenues of, the firm.

"The agent of the insurance company who procured the application for the issuance of the policies testified:

" 'I had a conversation during the year 1926 with Mr. Wilder and Mr. Brammer with respect to life insurance. It was in the summer of 1926, in the Gunter Hotel, and the next day in my office in the Travis Building at San Antotnio. I told them about the insurance policy I had and they said there was need for such protection, and they mentioned a law suit they had in Limestone County. That was mentioned by both of the, * * * and they said in the event they had a large road contract, they could borrow a good deal of money on it.

" 'As a result of the conservation, they purchased $25,000.00 life insurance each, payable to the firm of Brammer and Wilder, partnership, composed of J. L. Brammer and H. S. Wilder. * * *

" 'They discussed the real worth to the partnership of the

two men who composed the partnership, they discussed the real worth of the policy. They referred to their financial ability and to their credit ability.'

"Suit on this claim was instituted against the firm in 1926, and a judgment obtained thereon after the death of J. L. Brammer for the sum of $105,719.40, which judgment was pending on appeal to the Supreme Court at the time of the trial of this case in the court below.

"In this situation, on October 7, 1927, the members of the firm signed and published, as required by the statute, the following notice of dissolution:

" 'Notice is hereby given that the partnership firm of Brammer and Wilder, composed of J. L. Brammer and H. S. Wilder of Houston, Harris County, Texas, is to be dissolved thirty (30) days from the date hereof, and the business is to be continued at the same place under the firm name of Brammer & Wilder, Incorporated.

" 'Of this all persons dealing with said firm will take due notice.'

"In pursuance of this notice a charter was applied for, issued and filed on November 19, 1927, by which the corporation of Brammer & Wilder, Inc., was created, the purpose of the corporation as expressed in the Charter being 'to contract for the erection, construction or repair of any building, structure, or improvement, public or private, and erect, construct or repair same, or any part thereof, and to acquire, own, and prepare for use any materials for said purpose.' Upon the creation of the corporation the partnership transferred to it $100,000.00 worth of the assets of the firm, including all of the cash in banks, and the machinery and tools used by the firm in carrying on its business, but did not transfer all of the firm assets, the value of those retained being $68,000.00. The debts of the partnership at that time, excluding the Limestone County claim, were shown to be $34,000.00. None of these debts were assumed by the corporation. At the time the corporation was created on November 17, 1927, and up to the time of the death of J. L. Brammer on February 5, 1928, there existed debts owing to and by the firm and unfinished and incompleted contracts of the partnership. In the interim there was no change in the two insurance policies taken out by the members of the firm on July 4, 1926.

"The appellant is the sole beneficiary and independent executrix named in the will of J. L. Brammer. This will has

been duly probated and appellant has qualified as executrix of the estate.

"By agreement of the parties the $25,000.00 insurance on the life of Brammer was paid by the insurance company and turned over to George Hamman and invested by him in United States Treasury Certificates, which he holds in trust for the parties as their interest therein may be finally determined.

"The jury in the court below found upon sufficient evidence: That Brammer and Wilder intended when they formed the Brammer and Wilder Corporation and transferred to it the $100,000.00 worth of assets of the partnership to thereby dissolve and terminate the partnership; that debts were owing to and by the partnership 'on and after November 19, 1927'; that debts were owing to and by the partnership 'on and before February 5, 1928'; that there were unfinished contracts for the performance of work by the partnership on and after November 19, 1927, and 'on and before February 5, 1928'; that 'on and before February 5, 1928,' there was a contract between the partnership of Brammer & Wilder and W. L. Pearson & Company, Inc., by which the partnership undertook to perform road work for Pearson & Company under its contract with Hidalgo County; that on and after November 19, 1927, Brammer & Wilder, as a partnership, was engaged in the business of locating and acquiring sand and gravel deposits for development and sale; that on and before February 5, 1928, Brammer & Wilder, as a partnership, negotiated for the sale of sand as ballast to a railroad.

"Upon the verdict and the facts before set out the trial court rendered a judgment which recites the findings of the jury, before set out, and adjudges as follows:

" 'It is therefore on this the 24th day of March A. D. 1930, considered and so ordered, adjudged and decreed by the court, that the defendant H. S. Wilder do have and recover in his capacity as surviving partner of the partnership of Brammer & Wilder, consisting of the said H. S. Wilder and J. L. Brammer, now deceased, Houston, Texas, of and from the plaintiff, Mary Louise Brammer, in her capacity as Independent Executrix of the Estate of Jess Lee Brammer, deceased, the proceeds of the policy of life insurance sued upon herein upon the life of the said J. L. Brammer, deceased, in the sum of Twenty-five Thousand Dollars ($25,000.00), as assets belonging to and owned by the said partnership of Brammer & Wilder, Houston, Texas.

" 'And it appearing to the court that the said proceeds of

said life insurance policy were collected by the said defendant as surviving partner and as assets of the said partnership, but that thereafter the said plaintiff and defendant entered into a written agreement whereby the said proceeds were invested in United States interest bearing Treasury Certificates and that the said Treasury Certificates were placed in the hands of one George Hamman as trustee to hold the same to abide the result of this suit to test the ownership of the proceeds of said policy; the court is of the opinion that there should be a partition and distribution of the said United States Certificates in the proportion of one-half (½) to the said plaintiff and one-half (½) to the said defendant.

" 'It is accordingly, therefore, ordered, adjudged and decreed by the court that the said plaintiff as a part of the assets of the partnership of Brammar & Wilder, Houston, Texas, be and she is hereby awarded the right to demand and receive from the said George Hamman as trustee one-half of the said certificates, together with the accumulated interest thereon to the date of the receipt thereof; and it is likewise ordered, adjudged and decreed by the court that the said defendant, H. S. Wilder, as a part of the assets of the partnership of Brammer & Wilder, Houston, Texas, be and he is hereby awarded the right to demand and receive from the said George Hamman as trustee one-half of the said certificates, together with the accumulated interest thereon to the date of the receipt thereof.

" 'It is further ordered, adjudged and decreed by the court that should this judgment be appealed from that the said George Hamman as trustee hold the said certificates to abide the final determination of this cause.

" 'It is further ordered by the court that the defendant do have and recover against the plaintiff all costs in this suit incurred, for which let execution issue against the said plaintiff. As against defendant Wilder in his individual capacity, it is ordered that plaintiff take nothing, it appearing that defendant as an individual asserted no claim to the monies involved in this suit.'

"Appellant, by her pleadings in the court below and her brief in this court, claims all of the proceeds of this insurance policy on the theory that the beneficiary named in the policy having ceased to exist prior to the death of the insured, the policy became an asset of the estate of the deceased, and the appellant as executrix of the estate is entitled to possession of all of its proceeds, as assets of the estate.

"The appellee's contention is that the partnership did not

cease to exist until the death of Brammer on February 5, 1928, and that the insurance policy being payable to the partnership, all of its proceeds is a partnership asset which the surviving partner is entitled to have and hold.

"Upon this state of the record we respectfully certify for your decision the following questions:

"First. Did this court err in not holding that the expressed intention of the parties to dissolve the partnership and to organize a corporation to carry on its business, the organization of such corporation and the transfer to it of the greater portion of the assets of the firm, had the effect of dissolving the partnership existing at the time the insurance policies were issued so as to make the policies theretofore payable to the partnership payable to the insured's estate, as provided in the policies in event of the death of the beneficiary therein named prior to the death of the insured?

"Second. Do the facts stated raise the issue as to whether the only purpose and intention of each of the partners in insuring his life for the benefit of the partnership was to protect each other against partnership debts, and to use the policies as security for loans to the partnership?

"Third. Upon the facts stated, is the interest of the appellee in the proceeds of the policy in suit limited to the right to have such proceeds applied as far as may be necessary to the payment of Brammer's one-half of the debts of the partnership?

"The opinion of this court which accompanies this certificate is asked to be considered as a part hereof."

### OPINION.

■ We think that the facts stated in the certificate show as a matter of law that the partnership of Brammer & Wilder had not been dissolved up to the time of the death of J. L. Brammer. It is true that the two partners, J. L. Brammer and H. S. Wilder, stated in the notice of intention to incorporate, of date October 7, 1927, that they intended to dissolve such partnership thirty days from the date of such notice, and thereafter continue the partnership business as a corporation, but the undisputed facts, as shown by the certificate and the record, demonstrate that the intention stated in the notice was never fully carried out.

In connection with the above, the facts set out in the certificate show that the corporation of Brammer & Wilder, Incorporated, was in fact duly chartered, and a large part of the assets of the partnership transferred thereto. The certificate

and the facts further show that the corporation, after its formation, took over and operated a large part of the business enterprises that had theretofore been operated by the partnership. On the other hand the facts stated in the certificate, which are fully spported by the record, and the findings of the jury, show that very valuable partnership assets were never transferred to the corporation, but remained the property of the partnership as such. The certificate and verdict, fully supported by the record, further show that these assets remained the partnership property until Brammer's death. Finally the certificate, fully supported by the record, shows as a matter of law that all during the time between the formation of the corporation and the death of Brammer, the partnership continued to conduct extensive business enterprises, and continued to use the joint properties of the two partners in so doing. We think these facts show as a matter of law that the partnership of Brammer & Wilder was never in fact dissolved, but was an actual, active, legal, and living partnership up to the very moment of Brammer's death.

The above holding is in accord with the holding of the Court of Civil Appeals in the opinion of that court which accompanies the record. We quote and adopt the following portion of that opinion:

"We cannot agree with appellant in these contentions. The finding of the jury that Brammer and Wilder, when they formed the corporation and transferred to it $100,000.00 of the assets of the partnership, intended thereby to dissolve and terminate the partnership is immaterial in view of the further findings showing that the partnership affairs were not wound up by the creation of the corporation and the transfer to it of the larger portion of the assets of the firm, and that the partnership continued to transact business as such and that at the time of Brammer's death business and affairs of the partnership were incomplete and unsettled.

"Whatever may have been the intention of the parties in the organization of the Brammer & Wilder corporation and the transfer of the larger portion of the assets of the firm to the corporation, in regard to the dissolution and termination of the business of the firm, the findings of the jury, which are amply supported by the evidence, conclusively show that the firm did not cease to exist or die upon the organization of the corporation, and the provision in the insurance policy under which appellant claims its entire proceeds as beneficiary under the policy did not become effective.

"The intention to dissolve the partnership could not *ipso facto* effectuate its dissolution (Scott v. Kress, 191 S. W., 714), and the evidence not only fails to show that the parties carried out their expressed intention, but affirmatively shows they continued to carry on their partnership business after the formation of the corporation."

■ The second and third questions involve the construction of Article 5048, R. C. S. of Texas, 1925, and its proper application to the facts of the case at bar. The article is as follows:

"Any corporation, partnership, joint stock association or any trust estate doing business for profit, may be named beneficiary in any policy of insurance issued by a legal reserve life insurance company on the life of any officer or stockholder of said corporation, joint stock association or trust estate; or any partnership or member thereof may be the beneficiary in any policy of insurance issued by a legal reserve life insurance company upon the life of any member of said partnership, or any religious, educational, eleemosynary, charitable or benevolent institution or undertaking may be named beneficiary in any policy of life insurance issued by any legal reserve life insurance company upon the life of any individual. The beneficiaries aforenamed shall have an insurable interest for the full face of the policy and shall be entitled to collect same. On all policies of life insurance heretofore issued by legal reserve companies in which any of the aforenamed shall have been designated beneficiaries in the policies, said beneficiaries shall have an insurable interest to the full extent of the face of the policy and be entitled to collect same."

As we understand the opinion of the Court of Civil Appeals it holds that the facts of this case bring it under the rule of public policy announced by our Supreme Court in Cheeves v. Anders, 87 Texas, 287, 28 S. W., 274. In that case the Supreme Court announced that, under the rule of public policy then in force in this State, a partnership had no insurable interest in the lives of its individual members except to the extent of their liabilities to the firm.

When we come to examine Article 5048, supra, which became a law long after the rendition of the opinion in Cheeves v. Anders, it is evident from its clear and unambiguous language that it has changed the rule of public policy announced in the Cheeves case, and put in force in this State an entirely different rule. It is well settled that the Legislature has the power, by legislative enactment, to declare the public policy

of this State. Am. Nat. Ins. Co. v. Coates (Texas Com. App.), 112 Texas, 267, 246 S. W., 356.

■ An examination of Article 5048 discloses that by its very terms it expressly authorizes any partnership or member thereof to be the beneficiary in any policy of life insurance issued by a legal reserve life insurance company upon the life of any member of such partnership, and that such beneficiaries "shall have an insurable interest for the *full face of the policy* and shall be entitled to collect the same." (Italics ours). Language could not more plainly express the legislative intent to, by statute, change the rule in Cheeves v. Anders and make the policy issued under the statute payable in full to the beneficiaries authorized therein without limitation as to debts. When we examine the provisions of this act as applied to other concerns than partnerships, the construction we have given the same becomes absolutely certain.

The terms of Article 5048, supra, are so plain and unambiguous that it is needless for us to theorize on the reasons which probably moved the Legislature to enact it into law; it is sufficient to here state that the doctrine is generally predicated on the theory and when one member of the partnership dies the concern loses his skill and ability, as well as his peculiar knowledge of the particular business. It has also lost his constant efforts in upbuilding the business. Ruth v. Flynn, 28 Col. App., 171, 142 Pac., 194.

When we construe the policy here involved in the light of the facts of this case, as disclosed by the certificate, and the record, we are unable to find any fact or circumstance which would remove it from the terms of the rule of public policy as announced by Article 5048, supra.

We recommend that all three questions certified be answered "No."

Opinion of the Commission of Appeals answering certified questions adopted and ordered certified.

C. M. CURETON, Chief Justice.