### CLAYTON et al. v. SOUTHWESTERN LIFE INS. CO.

No. 13152.

Court of Civil Appeals of Texas. Dallas.

Jan. 9, 1942.

Dissenting Opinion Jan. 30, 1942.

Rehearing Denied Feb. 6, 1942.

Lee A. & Allen Clark, of Greenville, for appellants.

L. L. Bowman, Jr., of Greenville, for appellees.

LOONEY, Justice.

This suit arose over a controversy in regard to a proper distribution of the proceeds of two life policies, aggregating $25,000, issued by the Southwestern Life Insurance Company on the life of Martin McBride, in which W. M. McBride, Inc., was named beneficiary. The material facts are undisputed and are, as follows: W. M. McBride, Inc., was chartered under the laws of the State of Texas in December, 1926, for the purpose of conducting a general retail mercantile business at Greenville, Hunt County, Texas, and at other places. Its stock was owned as follows: Martin McBride, the managerial head of the corporation, owned 56% and his two sisters, Helen Clayton and Linna Mae McNeil, each owned 22% thereof. On March 6, 1932, the policies in question were issued; premiums thereon for the years 1932, '33, '34 and '35 were paid by the corporation. During 1935, the insured becoming permanently disabled within the meaning of the policies, payment of premiums to accrue in the future was waived. Prior to 1937, the business of the corporation had been reduced to the one store conducted in the City of Greenville, which, during that year, was totally destroyed by fire; and Martin McBride, as its sole active director, continued to manage and control its affairs; collected the insurance covering the fire losses and, after paying all debts due by the corporation, distributed among its stockholders the remaining proceeds of the fire loss; after which, the corporation, by unanimous consent of the stockholders, went into voluntary dissolution, the certificate for that purpose being filed with the Secretary of State on December 15, 1937. Thereafter, on April 6, 1938, the insured, without the knowledge or consent of the other stockholders, changed the named beneficiary (the corporation), naming his wife, Rose Agnes McBride, and his two sons, Martin McBride, Jr., and Warren McBride, beneficiaries.

After the distribution of the proceeds arising from the fire loss, there remained, undisposed of, the following properties belonging to the corporation, that is, a brick business house in the City of Greenville, rented for mercantile purposes (neither its value nor the amount of rent it yields is stated); also sixteen shares of stock in the Employers' Casualty Company, of the par value of $10 per share (its actual value is not stated); and had an account with the Greenville National Exchange Bank, which was continued to the time of the death of the insured (its status not being disclosed); these properties and affairs continued under the management and control of Martin McBride, the insured, to the time of his death, which occurred on December 6, 1939 (a few days less than two years after the certificate of dissolution was filed with the Secretary of State). At the time the policies were taken out, the insured, Martin McBride, was an active and apparently successful business man, of large experience, well educated, well and favorably known, and, for a number of years, had managed the affairs of the mercantile business, and the insurance on his life was taken out originally for the sole benefit of the corporation.

The controversy having arisen in regard to the distribution of the proceeds of the two policies, this suit was instituted by Martin McBride, Jr., individually and as administrator of the estate of his deceased father, and Rose Agnes McBride, individually and as guardian of the estate of Warren McBride, a minor son of herself and her deceased husband, against Southwestern Life Insurance Company, Helen Clayton and her husband, Linna Mae McNeil and her husband; seeking judgment for the proceeds of the policies, and that the Claytons and McNeils be denied recovery of any portion thereof, except, it was admitted that, as stockholders, they were entitled to be reimbursed to the extent of their proportionate part (22% each) of the premiums on the policies, paid by the corporation. For reasons appearing later, the Claytons and McNeils each claimed 22% of the proceeds of the policies, being the percentage of stock each owned in the corporation.

The record discloses that the Southwestern Life Insurance Company, at all times, has been willing, ready, and able to pay the proceeds of the policies to the person or persons entitled to receive same, but was unable, with safety to itself, to determine to whom to make payment, owing to the conflicting and rival claims; therefore, filed an interpleader, requesting permission to pay the proceeds of the policies into the registry of court, and that it be discharged with an allowance of an attorney's fee; all of which was granted by the court, the money paid into its registry, an attorney's fee of $250 was allowed, and the insurance

company was fully and finally acquitted and discharged from all liability. The judgment disposing of the case as to the insurance company was not excepted to by either party, hence it will be affirmed, and the company's connection with the case will receive no further notice.

On hearing as to the other parties, the court rendered judgment to the effect that, appellees recover the entire proceeds of the two policies, save and except 44% of the amount of the premiums upon the policies, paid by the corporation, which was awarded to the Claytons and McNeils, same being in proportion to the amount of stock in the corporation owned by them; it was further adjudged that they pay all costs of court; to all of which they excepted, gave notice of and perfected this appeal.

Appellees admit in their brief (pages 2 and 3) that they are not entitled to the proceeds of the policies by virtue of the change of beneficiary; their contention being that, the corporation having been dissolved, the stockholders thereafter had no insurable interest in the life of Martin McBride, hence his estate was entitled to recover the proceeds of the policies. In view of this admission, appellants contend that the sole question for determination is, whether or not the corporation, being in process of liquidation at the time of the death of Martin McBride, was a legal beneficiary; if so, as stockholders, they are entitled to participate in the distribution of the proceeds of the policies, in proportion to the stock in the corporation owned by them; that is to say, 44% or 22% each.

Thus, the inquiry is reduced to the question, whether or not the corporation existed as a legal entity at the death of the insured and had an insurable interest in his life. The statute (Art. 1387, subd. 4) provides for the voluntary dissolution of a corporation by the written consent of all stockholders, certified to and filed with the Secretary of State; and, in such case (Art. 1388), provides that the president, directors or managers of the affairs of the corporation, at the time of the dissolution, shall be trustees of the creditors and stockholders, "with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution * * * and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property."; it being also provided (Art. 1389) that "The existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty, to settle up its affairs. * * *"

■■ Construing the several provisions of the statute on the subject of dissolution, we think it obvious that, where a receiver is not appointed, a corporation exists as a legal entity for three years from the filing of the certificate of dissolution with the Secretary of State, unless its affairs are sooner settled, debts paid, and money or other property, if any on hand, divided among the stockholders. Until the three years elapse, or the affairs of the corporation are fully settled, it has a limited or de facto existence for winding-up purposes. Construing these statutes, the Amarillo Court of Civil Appeals, in Waggoner v. Edwards, 68 S.W.2d 655, 659, speaking through Chief Justice Hall, said: "It was clearly the intention of the Legislature in enacting these statutes to change the rule of law as it previously existed under which a dissolved corporation could not be sued, and the effect of the statutes cited is to maintain the status quo and continue the existence of the corporation as a legal entity for the purpose, however, of distributing its assets first amongst the creditors and the residue, if any, amongst the stockholders, and it is expressly authorized to sue and be sued upon any claim against it." Construing a similar statute, the Supreme Court of South Carolina, in Henry Mercantile Co. v. Georgetown & W. R. Co., 104 S.C. 478, 89 S.E. 480, 481, said: "The statute provides the manner in which the corporation may be dissolved, but it does not contemplate a dissolution until the affairs of the corporation have been liquidated." In First National Bank v. United States, D.C., 9 F.Supp. 28, 29, the court said: "The statutes of Wyoming, supra, like those of many other states, provide that the corporation may have a limited existence for some purposes, even after a dissolution, and it is the law * * * that a corporation may have a de facto existence for certain purposes after dissolution." And in 14A C.J. 1151, § 3804, it is stated that: "Statutory continuance for some pur-

poses after dissolution or forfeiture of charter is very generally provided for, so that, while destroying the corporation's power to continue its business under the charter, a dissolution may not have the effect of dissolving the corporation for absolutely all purposes, and the corporation may continue to have a limited existence during the statutory period of continuance. Under the right to continue its business for winding-up purposes the corporation has authority to do whatever is necessary as an incident to such winding up." 19 C.J.S., Corporations, § 1728. The case of Brammer v. Wilder, 122 Tex. 247, 57 S.W.2d 571, involved the distribution of the proceeds of a policy of insurance on the life of a member of a partnership, the pivotal question being whether or not the partnership had been dissolved; its status on the facts being very similar to that of the instant case, in that, there had been a partial liquidation of the affairs of the partnership, with reference to which, the court, in an opinion by Judge Critz (quoting from the Syl.) held that: "Notice of partnership's dissolution and transfer of portion of assets to corporation did not dissolve partnership where partnership retained assets and conducted business until partner's death."

So, it appearing that, at the death of Martin McBride (less than three years from the filing of the certificate of dissolution with the Secretary of State), the affairs of the corporation not having previously been fully settled, as it then owned a brick business house in the City of Greenville, rented to and occupied by a merchant, owned sixteen shares of stock in a corporation, and maintained a current account with the bank with which it had conducted its business for several years, we do not think it had ceased to exist as a legal entity, had not been dissolved for all purposes, but was invested with a limited or de facto existence, to the end that its affairs might be fully and finally settled.

The interest of W. M. McBride, Inc., in the life of Martin McBride, was based upon his experience and managerial ability as a merchant; the policies being intended as an indemnity against loss or damage the corporation would suffer by being deprived of his services, in the event of his death. This character of insurance was prohibited in this State as being against public policy, until the enactment of Art. 5048, R.C.S., see Brammer v. Wilder, 122 Tex. 247, 57

S.W.2d 571. The provisions of that Article, in so far as pertinent here, are that, "Any corporation * * * may be named beneficiary in any policy of insurance issued by a legal reserve life insurance company on the life of any officer or stockholder of said corporation * * *. The beneficiaries aforenamed shall have an insurable interest for the full face of the policy and shall be entitled to collect same. * * *"

We think it follows, inescapably, that, as long as the corporation in process of liquidation has a legal existence for any purpose, although limited or de facto, and owns assets and has unsettled affairs, as in the instant case, whether great or small, requiring the services of the insured officer or stockholder, the insurable interest persists, and the corporation, as expressly provided by statute, is entitled to collect the full face of the policy; and when collected, the fund has the status of, and is subject to be dealt with as any other asset of the corporation.

So we conclude that, at the death of Martin McBride, the insured W. M. McBride, Inc., being invested with a limited or de facto corporate existence for winding-up purposes, owning, at that time, unliquidated assets and having unsettled business affairs that, up to the death of the insured, were under his management and control, the proceeds of the policies, being assets of the now defunct corporation, belong to the stockholders; hence, appellants are entitled to their proportionate interest in this fund; that is, 44% of the whole, each appellant owning 22% thereof. The judgment below is accordingly reformed in harmony with the views herein expressed and, as reformed, is affirmed. All costs of this appeal, as well as the costs below, will be taxed against and paid by the appellees.

Affirmed in part, and in part reformed and affirmed.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

I am not in accord with the holding of the majority; the judgment of the court below should be affirmed.

The two policies of insurance involved in this suit were term policies on the life of Martin McBride, expiring in ten years from their dates unless matured by death before that time. The policies were dated March 1, 1932. Clearly, at that date, W.

M. McBride, Inc. (beneficiary named in the policies), had a valuable insurable interest in the life of the insured, and if the insured had died during the life of the corporation and when it had an insurable interest, the proceeds of the policies would undoubtedly have gone to the corporation, or its stockholders. The policies were taken out primarily for the benefit of the corporation.

The record shows that the insured, Martin McBride, and appellees, Helen Clayton and Linna Mae McNeil, were the sole stockholders of the corporation, and Mr. McBride its sole director. On December 15, 1937, the stockholders filed with the Secretary of State articles of dissolution, showing that the corporation had voluntarily dissolved; all debts paid and its assets distributed among the three stockholders as they devised. A brick building in the City of Greenville and 16 shares of stock, of the par value of $10 per share, in Employers' Casualty Company, owned by the corporation, were not partitioned among the stockholders, nor were they partitioned at the time of trial in October, 1940. Mr. McBride managed the store building, collected the rents and deposited the money in a bank up to about the time of his death; and since that time, by common consent, Helen Clayton has managed the building, collected and deposited the rents for the joint account of the owners. Hence, I think that, at the death of the insured, December 6, 1939, the corporation was dead, and the undivided property was in the possession of the owners, as tenants in common. After the corporation had lost its existence, the director and sole stockholders were vested with title to all remaining property, as against all persons except creditors of the corporation, and where there were no creditors, the full title vested in the director and stockholders as tenants in common. The corporation and stockholders were distinct entities in the eyes of the law; hence the corporation had no interest in the property vesting in the stockholders.

On April 6, 1938, Mr. McBride, evidently recognizing the dissolution of the corporation, that no further corporate affairs remained to be administered by its director or trustee, and that the corporation had no longer an insurable interest in his life, and being conscious of the fact that he had become "wholly and permanently disabled" to attend to any business, caused the beneficiary in the policies to be changed—policy 288911 to his wife, Rose Agnes McBride, and policy 288912 to his children, Martin McBride, Jr., and Warren McBride. The policies provide: "The insured may have any beneficiary of this policy changed, and a new beneficiary designated by endorsement hereon at any time while the policy is in force and not assigned, upon making written application for such change at the Home Office of the Company. The change shall take effect, and all interest of the former beneficiary shall cease, only upon the making of such endorsement by the Company."

However, irrespective of the legal effect of the change of beneficiary in the policies, it is well settled in this state that it is against public policy to allow a party who has no insurable interest to be the owner of a policy of insurance upon the life of a human being; and further, if the insurable interest should cease before the death of the insured, then the whole of the policy will go to the estate of the insured. Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274, 47 Am.St.Rep. 107; Price v. Knights of Honor, 68 Tex. 361, 4 S.W. 633; Schonfield v. Turner, 75 Tex. 324, 12 S.W. 626, 7 L.R.A. 189; Hatch v. Hatch, 35 Tex. Civ.App. 373, 80 S.W. 411.

The record shows that W. M. McBride, Inc., was formed for the purpose of buying and selling goods at retail, and in furtherance of such business, at the date the policies were issued, operated several stores, with Mr. McBride as its managerial head; and in 1937 only one of these stores was then being operated. Subsequently, this store was destroyed by fire; settlement was made with the insurance company that carried the loss; all debts of the corporation paid and the balance of the assets in cash distributed to the three stockholders. From that time forward, Martin McBride never operated any business; he was wholly and permanently disabled. Under these facts, there were no corporate affairs to be administered by Mr. McBride. It has been repeatedly held that where a corporation is dissolved without creditors, and no further corporate affairs are to be administered, its property passes to the stockholders; and where the stockholders stand as trustees, as in this case, they are merely holding the property as tenants in common, and may validly convey it in that capacity. In the absence of creditors, the property is subject to the

tenants' (trustees') contracts and may be subjected to their respective debts. Montgomery v. Heath, Tex.Civ.App., 283 S.W. 324; Bacon v. National Bank of Commerce, Tex.Civ.App., 259 S.W. 244.

Furthermore, the policies of insurance involved here, being 10-year term policies (expiring in 1942), and there being no unfinished corporate business, no creditors, no suits or litigation, and the insured being wholly and permanently disabled, manifestly, the corporation, if it owned the policy, would be more pecuniarily interested in the termination of the insured's life than the continuation thereof. Indeed, it is generally held that a corporation has an insurable interest in the life of an officer on whose services the corporation depends for its prosperity, and whose death would be a substantial loss to it. The mere fact, however, that an officer is president, director, or manager of a corporation, is not sufficient to establish an insurable interest where it does not further appear that the success of the business is dependent upon the life of such officer. In this case, it can hardly be said that Mr. McBride was performing any service for the corporation or its stockholders after the dissolution of the corporation, and no corporate business was then dependent upon his life. Therefore, the corporation, as a matter of law, had a direct interest in his death, and not in his life. If he had lived until March 1, 1942, the corporation or its directors and stockholders would have received nothing on the policy; only in his death was it interested. Hence the corporation's interest was directly contrary to the public policy of this state.

I fully recognize that under a statutory extension of life of a dissolved corporation (1388, R.C.S.), it may exercise the powers enumerated in the Act, which are reasonably incident to the purpose of the extension; namely, to wind up the corporation and liquidate its affairs. The power to sue and be sued is quite generally included. Such is the holding of the Amarillo Court of Civil Appeals in Waggoner v. Edwards, 68 S.W.2d 655, 659, cited by the majority. But such corporations are not authorized to continue the business for which they were established, or to acquire or engage in any new business transaction. The time limit does not apply unless the circumstances are such as to bring the corporation's affairs within the provision of the statute. Thus, where the Act declares that the directors, as trustees, may continue the corporation for three years with power to settle the affairs, and the record shows that the affairs have been settled before that time, all debts paid, and the property owned by the corporation placed in joint possession of the stockholders, the corporation has no longer any existence. Dissolution of the corporation is the termination of its corporate existence; liquidation implies the winding up of the affairs of the corporation with its creditors, and making disposition of its assets. In this case, the dissolution was declared under the statute, all debts had been paid and the property remaining distributed, or placed in the possession and control of the rightful owners, the three stockholders, and, so far as this record shows, the property is now in their joint possession as tenants in common. Mr. McBride contracted with reference to his interest, and Mrs. Clayton is managing the property for the joint account of all. The total extinction of the corporate entity has been accomplished. The store building and 16 shares of stock in Employers' Casualty Company are the property of the three stockholders, under their control, and managed by one of the joint owners, Mrs. Helen Clayton. In the case of Montgomery v. Heath, supra [283 S.W. 327], the court said: "As the shareholders of the defunct corporation, they became the owners * * * in common of this property, subject, of course, to the claims of any creditors; and it does not appear that the company had any creditors." So, here, when W. M. McBride, Inc., was dissolved and its debts paid, the three stockholders became owners of the remaining property and were the owners as tenants in common, each owning his respective interest therein. The corporation becoming dead, the tenants in common had no insurable interest in the life of the insured. The judgment of the court below should be affirmed.