MARTIN MCBRIDE, JR., ET AL. V. HELEN CLAYTON ET AL.

No. 7967. Decided December 2, 1942.
(166 S. W., 2d Series, 125.)

72

*L. L. Bowman, Jr.,* of Greenville, for petitioners.

It was error for the Court of Civil Appeals to hold that the corporation was still in existence and a legal beneficiary under a life insurance policy payable to the former corporation. Brammer v. Wilder, 122 Texas 247, 57 S. W. (2d) 571; Lyon-Gray Lbr. Co. v. Gilbraltar Life Ins. Co., 269 S. W. 80; Leyhe v. Leyhe, 220 S. W. 377.

*Lee A.* and *Allen Clark,* of Greenville, for respondents, Helen Clayton and Linna Mae McNeil.

Since the evidence showed that the corporation, of which deceased had been the active manager, was still in existence at the death of Martin McBride, the Court of Civil Appeals held correctly that it was a legal beneficiary and the stockholders were entitled to the proceeds of the policies. Smith v. Schoellkopf, 68 S. W. (2d) 346; Smithsonian Inst. v. Meech, 149 U. S. 398, 18 Sup. Ct. 596, 42 L. Ed. 793; Freels v. Walker, 35 S. W. (2d) 408.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

Martin McBride was president and owner of 56 per cent of the capital stock of W. M. McBride, Inc., which operated retail merchandising stores at Greenville and other cities under a charter of date December 29, 1926, declaring that it was formed "for the purpose of the purchase and sale of goods, wares and merchandise and for the transaction of general retails mercantile businesses." On March 1, 1932, Southwestern Life Insurance Company issued policies Nos. 288911 and 288912 for $10,000.00 and $15,000.00, respectively, on the life of McBride with W. M. McBride, Inc., as beneficiary in each. The premiums, aggregating $296.75 per year, were paid for four years by the corporation. In 1935 McBride became totally and permanently disabled, and the insurance company waived further premium payments. By 1937, the business of McBride, Inc., had been reduced to one store, which, in the fall of that year, was destroyed by fire. That portion of the corporation's capital stock not belonging to McBride was owned equally by

his sisters, Helen Clayton and Linna Mae McNeil, respondents here. Shortly after the fire, McBride, Inc., was dissolved, its debts paid and its assets (except as hereinafter noted) divided and delivered to McBride and respondents according to their respective interests. A certificate of dissolution being filed with the Secretary of State, he, on December 15, 1937, ordered dissolution of the corporation.

On April 6, 1938, McBride changed the beneficiaries of the policies so that policy No. 288911 became payable to his wife, Rose McBride, and policy No. 288912 to his two sons, Martin McBride, Jr., and Warren McBride.

On August 10, 1938, McBride and his wife entered into a separation agreement. On December 6, 1938, they were divorced. Exactly a year later McBride died.

This suit was filed by Martin McBride, Jr., individually and as administrator of the estate of Martin McBride, deceased, and by Rose McBride, individually and as guardian of the estate of Warren McBride, a minor, against the insurance company, Helen Clayton and Linna Mae McNeil and their husbands, to recover the proceeds of the policies. The insurance company, by interpleader, admitted its liability as stakeholder and tendered the $25,000.00 into court. The trial court's judgment was that "plaintiffs, Martin McBride, Jr., and Rose McBride, individually, and Warren McBride, a minor" should recover of and from the Claytons and the McNeils, except that the latter were awarded recovery of $890.40 as their proportionate part of the premium paid by McBride, Inc. By majority opinion, Chief Justice Bond dissenting, the Court of Civil Appeals at Dallas reformed the judgment so as to give respondents 44 per cent of the proceeds, on the ground that McBride, Inc., still had a corporate existence when Martin McBride died and had, therefore, an insurable interest in his life. 158 S. W. (2d), 820. The correctness of that ruling is the sole point of error assigned here.

Petitioners admit that they acquired no right to the policies by virtue of McBride's attempted change of beneficiaries. The respondents assert no rights therein as sisters of the deceased. Nor is any question before us as to how Rose McBride's divorce affected her rights.

In approaching the question before us, it is necessary to consider the legal status of McBride, Inc., as a dissolved corporation, as well as the limitations which sound public policy has placed on the meaning of the phrase "insurable interest."

At common law, when a corporation was dissolved, its real estate reverted to the grantor and its personal property to the King. 1 Black. Com. 484. It was dead, and its former officials had no rights or powers whatever. This worked hardship and resulted in injustice in many instances to both its creditors and its stockholders.

To remedy this, the Legislature, in 1907, enacted subdiv. (7), sec. 4, of Chap. 166, Acts Reg. Ses. 30th Leg., which is now incorporated in Articles 1388 and 1389, R. S. 1925, relevant of which are as follows:

"Art. 1388. Upon the dissolution of a corporation, * * the president and directors as managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, *with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation* at the time of its dissolution; * * and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. * *

"Art. 1389. The existence of every corporation may be continued for three years after its dissolution from whatever cause, *for the purpose of enabling those charged with the duty, to settle up its affairs.* * *" (Italics ours.)

■■ Although the statutes give McBride, Inc., a continued existence for as long as three years after the surrender of its charter, it clearly could not be so continued to *purchase and sell goods, wares and merchandise and to transact a general retail mercantile business*. Its charter ceased on December 15, 1937, to have any force as such, and McBride, Inc., could derive no power from it, could not engage in retail merchandising under it. Whatever powers remained came by virtue of the

statute and only for the specific and limited purposes named thereon. Its qualified existence was in the nature of an administration of its estate, with all its corporate rights fixed and determined as of the date of its dissolution. Crease v. Babcock (Mass. Sup. Ct.), 23 Pick., 334. It was continued *only* to collect what was due it, to pay what it owed and to distribute what was left of its assets to those entitled to them. Jaffee v. Com'r. of Internal Revenue, 45 Fed. (2d) 679; 13 Am. Jur., sec. 1366, p. 1206; 19 C. J. S. p. 1509, sec. 1743 (4). In other words, the powers of its officers had become restricted to those of liquidating agents. 11 Tex. Jur., sec. 470, p. 136.

■ The statute which the respondents claim gives them an insurable interest in McBride's life is Art. 5048, R. S. 1925, pertinent provisions of which are:

"Any corporation * * may be named beneficiary in any policy of insurance issued by a legal reserve life insurance company on the life of any officer or stockholder of said corporation. * * The beneficiaries aforenamed shall have an insurable interest for the full face of the policy and shall be entitled to collect same."

In applying this statute to the facts before us we must assume that in the use of the term *insurable interest* the Legislature intended it to mean what the courts of this State had theretofore said it meant. 39 Tex. Jur., p. 200, sec. 107. Before this statute was passed, the Supreme Court had said that insurable interest is the interest of one who may from the life of the insured reap some pecuniary advantage of a definite nature, so that the insurance policy offers no inducement to him to take the insured's life. Cheeves v. Anders, Adm., 87 Texas 287, 28 S. W., 274. 47 Am. St. Rep. 107. That there is more than a presumption that the Legislature knew this judicial definition of the phrase and had it in mind in the enactment of Art. 5048, supra, is established by the fact that the emergency clause thereof recites, "the fact that the Courts of Texas have held that a corporation * * does not have an insurable interest in the life of its officers * * renders it impossible for financial institutions *to properly protect themselves in the event of the death of a valuable executive.* * * (Italics ours.)

■ Moreover, "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence,

and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other states and the decisions of the court." 59 C. J., p. 1038, sec. 616. Since the Legislature knew that our courts were holding that a corporation had no insurable interest in the life of an officer, and knew that the holding was contrary to the weight of authority as announced by the courts of other jurisdictions, and was attempting, therefore, by Art. 5048, supra, to make the Texas law "part of a general and uniform system of jurisprudence," it evidently meant to give Texas corporations the same insurable interest in the lives of their officers and stockholders as was being enjoyed by corporations in other jurisdictions under the decisions of their courts.

Looking, then, to some of these other jurisdictions wherein insurable interests had been recognized in the absence of statute, it appears that the Supreme Court of Ohio had decided that a glass company had an insurable interest in the life of one of its three controlling stockholders when he was a man of extensive experience and skill in the glass business to whom the stockholders looked primarily for the success of the business. Keckley v. Coshocton Glass Co., 86 Ohio St., 213, 99 N. E., 299, Am. Cas. 1913D, 607. The Supreme Court of Appeals of Virginia had said that when a corporation was named beneficiary in a policy with the honest purpose of protecting the concern against loss in the event of the death of its president and general manager, and the record showed that his death was a substantial, irreparable loss to it, the transaction was not obnoxious to the public policy of that state. Mutual Life Ins. Co. v. Board, Armstrong & Co., 115 Va. 836, 80 S. E., 565, L. R. A. 1915F, 979. The Supreme Court of Pennsylvania had held that to sustain such a contract it must appear that there is a real concern in the life of the insured whose death would be the cause of substantial loss to the beneficiary; but that such *would not result from the cessation of ordinary service but would arise when the success of the business is dependent on the continued life of the employee.* United Secur. Life Ins. & T. Co. v. Brown, 270 Pa., 270, 113 Atl., 446. These and other cases were later cited with approval by Chief Justice Taft when he held that an incorporated hardware company had an insurable interest in the life of its president, who, when the policies were issued, was thirty-seven years old and in good health and was a man of ability, energy and initiative, and

when the returns from its business had been much increased under his management. United States v. Supplee-Biddle Hdw. Co., 265 U. S., 189 68 L. Ed., 970. "It is generally held that a corporation has an insurable interest in the life of an officer on whose services the corporation depends for its prosperity, and whose death will be the cause of a substantial loss to it." Anno. I, 75 A. L. R., p. 1362, citing numerous authorities.

In the light of these decisions recognizing an insurable interest in the absence of statute, when it gave the corporation an insurable interest in the lives of its officers and stockholders so that the corporation could protect itself "in the event of the death of a *valuable* executive," did the Texas Legislature mean to extend it to dissolved corporations under facts such as we have in this case? We have concluded that it did not.

When the policies in suit were purchased, McBride, Inc., capitalized for $50,000.00, was a going concern. It was operating retail stores in Greenville and at other places. Martin McBride was a very active and successful business man; he "was well known, well liked, had a fine education, was experienced in business and had been managing the affairs of the stores owned previously by his father for a number of years." Consequently, he fully measured up to the standard by which the numerous cases above cited determined insurable interest. He was to McBride, Inc., a *valuable* executive, as contemplated by the emergency clause of Art. 5048, supra, so the concern desired "to properly protect" itself in the even of his death. He was an officer from whose continued life the other stockholders would "reap some pecuniary advantage of a definite nature," so that the insurance policies offered them no inducement to take his life. But all this soon came to nothing. Adversity first overtook McBride, and, then, McBride, Inc. In 1935, McBride became totally and permanently disabled. Significantly, by 1937 the business of McBride, Inc., had shrunk to one store. Then, in the fall, came that store's total destruction by fire. The fire insurance was collected, the corporation's debts were paid, the remainder of the insurance money was distributed between McBride and respondents, and McBride, Inc., was dissolved, the Secretary of State's order of dissolution being certified on December 15, 1937. With these things accomplished, the corporation's affairs had been fully liquidated and all its assets had been divided among the stockholders except a rented store building and sixteen shares of stock of

another corporation of the par value of $10.00 each. By common consent, McBride, up to the time of his death, collected these rents and deposited them in a bank to the credit of the old account of McBride, Inc. Some of this he checked out to pay for repairs and improvements on the building. He had no duties with respect to the stock, because the corporation that issued it has withheld payment of dividends thereon until it can be properly divided and transferred. The record reflects neither effort nor desire on the part of McBride and respondents to sell or to partition this store and stock. They seem to have been content to hold it as tenants in common.

■ In short, the existence of McBride, Inc., as a mercantile cern, had terminated in 1937. And any real reason to continue its corporate existence in order "to settle up its affairs" in the hands of McBride as liquidating agent had ceased two years before his death. It owed nobody, nobody owed it. Even as to McBride and respondents, nothing remained to be done but to sell the store and the stock and to divide the proceeds. This, for reasons sufficient to them, they had not chosen to do. That the collection of rents accruing on the building, which had been rented to the same tenant for some years before the dissolution of the corporation, required none of the skill which McBride was contributing to the growth of the business when the policies were purchased, that it required no skill peculiar to McBride, is proved by the fact that since his death "such affairs have been managed, looked after and controlled by the defendant Helen Clayton," and there is no showing that she possessed any peculiar skill or that she had had anything whatever to do with the management of McBride, Inc., when it was on its feet.

Under all these circumstances we are forced to the conclusion that 44 per cent of the policies in controversy ($11,000.-00) would mean much more to the respondents than any service McBride rendered to the defunct corporation during the two years immediately preceeding his death, and that, therefore, the insurable interest once enjoyed by McBride, Inc., in his life had terminated before his death. This may be a crude measuring stick, but it is the one the law uses. Cheeves v. Anders, supra; Whiteselle v. Northwestern Mut. Life Ins. Co. (Com. App.), 221 S. W., 575; Drane v. Jefferson Standard Life Ins. Co., 139 Texas 101, 161 S. W. (2d) 1057, and authorities there cited. And, with us, the effect of a want of insurable

interest is the same where it ceases as where it never existed. 24 Tex. Jur., sec. 72, p. 772.

Brammer v. Wilder, 122 Texas 247, 57 S. W. (2d) 571, cited by respondents, is not in point here, because the opinion opens with the express statement, "We think that the facts stated in the certificate show as a matter of law that *the partnership of Brammer & Wilder had not been dissolved up to the time of the death of J. L. Brammer.*" (Italics ours.) Although the partners did intend to wind up the firm business, they had not actually done so when the insured partner died. During the interval of less than four months from the time they decided to quit until Brammer's death the partnership not only carried on with pending contracts but undertook some new business. In Smith v. Schoellkopf (Civ. App.), 68 S. W. (2d) 346, the insured owed his former partner, the beneficiary, more than the policies amounted to, so the latter recovered, not as survivor of the dissolved partnership but as a creditor.

In our conclusion in this case, we do not mean to hold that the insurable interest of a corporation in its officers and stockholders can never survive the statutory period of liquidation when the insured dies within that time. Each case must stand or fall on its own peculiar facts under our well established definition of "insurable interest."

The judgment of the Court of Civil Appeals is reversed; that of the trial court is affirmed.

Opinion adopted by the Supreme Court December 2, 1942.